[Crim. No. 1157. Department One.—November 30, 1904.]

## THE PEOPLE, Respondent, v. FRED MEAD, Appellant.

CRIMINAL LAW—FELONY—UNLAWFULLY PLACING WIFE IN HOUSE OF PROSTITUTION—INFORMATION—UNCERTAINTY—ABSENCE OF SPECIAL DEMURRER—ARREST OF JUDGMENT.—Under an information charging that the defendant, at the time and place stated, "did then and there, *willfully, unlawfully, and feloniously* connive at, consent to, and permit the placing and leaving" of his wife "in a house of prostitution" described, is sufficient to enable a person of common

understanding to know that it was intended to place her there for purposes of prostitution, and not in an innocent capacity as cook or seamstress. Any mere uncertainty as to the particular circumstances of the offense was waived by a failure to demur specially, and cannot be made the ground of a motion in arrest of judgment.

ID.—NEW TRIAL—DEFECT NOT AFFECTING SUBSTANTIAL RIGHT.—Where the evidence in the record shows that there was no pretense on the part of the prosecution that the defendant would be guilty if the wife was placed in the house of prostitution for innocent purposes, and the evidence for the prosecution tended to show that she was there for purposes of prostitution, and that defendant had knowledge of the purpose, and actively procured her to be there, the defendant was not prejudiced in any substantial right on the trial by the supposed defect in the information, which might have been seasonably remedied by amendments, if the proper objection had been made by demurrer before the trial, and such defect is not ground for a new trial or for reversal of the judgment.

ID.—EVIDENCE—CROSS-EXAMINATION OF WIFE—OTHER HOUSES OF PROSTITUTION—HOUSE KEPT BY SISTER—FEAR OF HUSBAND.—Where the wife of the defendant, who was a witness for the prosecution, testified on cross-examination by defendant's counsel that she had been an inmate of other houses of prostitution, including one at a particular place, a question asked by defendant's counsel as to whether the house at that place was kept by her sister was properly excluded as immaterial; and where at the time of the ruling there had been no testimony that she entered the house named in the information through fear of her husband, it cannot be said that the court erred in excluding the evidence as tending to show that she would be more likely to enter that house of her own volition, uninfluenced by such fear.

ID.—"HOUSE OF PROSTITUTION"—"CRIBS"—VERDICT NOT AGAINST LAW—INSTRUCTIONS—NEW TRIAL.—Where the evidence shows that the house in question contained twelve rooms, commonly known as "cribs," each of which was occupied by a different woman as a place of prostitution for herself alone, and that the wife of the defendant occupied one of them for that purpose, it shows that defendant's wife was in a "house of prostitution," within the intent and meaning of the statute; and the verdict is not against law merely because the court instructed the jury that the house must be occupied by two or more women. Such instruction would not justify a new trial, the evidence being otherwise sufficient to justify the verdict.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—PROOF OF MARRIAGE—COMMENT UPON EVIDENCE OF DEFENDANT.—Where there had been evidence on the part of the prosecution satisfactorily showing that a legal marriage had been performed, and the defendant had testified equivocally on that subject and denied the marriage, if at all, only by implication, it was not misconduct for the district attorney to

comment upon his failure expressly to deny that the woman who was placed in the house of prostitution was his wife.

ID.—APPEAL—INSUFFICIENT ARGUMENT.—A statement of defendant's counsel that the court erred in refusing defendant's proposed instructions, by numbers, with reference merely to the folios of the transcript, is not an argument justifying any consideration of errors supposed to be presented thereby.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Frank J. Murphy, for Appellant.

U. S. Webb, Attorney-General, J. C. Daly, Deputy Attorney-General, and E. B. Power, Deputy Attorney-General, for Respondent.

SHAW, J.—The defendant was convicted of the crime of conniving at, consenting to, and permitting his wife to be placed in a house of prostitution, as defined by the act of 1891 (Stats. 1891, p. 285), and appeals from the judgment of conviction and from the order denying his motion for a new trial.

1. The first error that is assigned is the denial of his motion in arrest of judgment made upon the ground that the information is defective. The provisions of the act defining the crime, so far as applicable, are as follows: "Any man who connives at, consents to, or permits the placing or leaving of his wife in a house of prostitution, or allows or permits his wife to remain therein, shall be guilty of a felony," etc. The information charges that the defendant at the time and place stated "did then and there willfully, unlawfully, and feloniously connive at, consent to, and permit the placing and leaving of one Gertie Raymond Mead, then and there and at all times herein mentioned the wife of said Fred Mead, in a house of prostitution, situate," etc. The contention of the defendant is, that this statute is not to be construed literally so as to forbid a husband to place his wife in a house of prostitution, or permit her to remain therein, for an innocent purpose,—as a cook or seamstress, for instance,—but only to forbid the placing or leaving her therein for the purposes of

prostitution, and that when construed in this way the crime is not complete, unless it is alleged and proven that the wife was left in the house of prostitution with the intention on the part of the husband that she should herself act as a prostitute. It may be conceded for the purposes of this case that if the objection had been raised by demurrer for uncertainty the information would be fatally defective. But where there is no demurrer, and the defect is sought to be raised solely by motion in arrest of judgment, we think a different rule should prevail. Section 1185 of the Penal Code declares that an objection to the sufficiency of the information which is waived by failure to demur, will not be sufficient to justify an order for the arrest of judgment. Under the provisions of the code an information must state the acts constituting the offense "in such manner as to enable a person of common understanding to know what is intended" (sec. 950, subd. 2), and if it is sufficient to withstand this test it is not subject to attack either by general demurrer or by motion in arrest of judgment. (See, also, Pen. Code, sec. 959, subd. 6.) The words used are to be construed "in their usual acceptance in common language," except technical phrases defined by law. (Pen. Code, sec. 957.) We think it must be admitted that a person of common understanding, construing words according to their usual acceptance in common language, would understand that a man who was charged with "willfully, unlawfully, and feloniously conniving at, consenting to, and permitting" the placing of his wife in a house of prostitution was charged with placing her there for the purpose of prostitution, and not in the innocent capacity of a cook or seamstress. The words "willfully, unlawfully, and feloniously" must be given some effect in construing such language, and they certainly would exclude an act which by law was innocent. The utmost that can be said in criticism of this information, therefore, is, that it may not be direct and certain as to the particular circumstances of the offense. Such an objection is waived by a failure to demur. (Pen. Code, sec. 1012.)

A motion in arrest of judgment is made after the trial. In this case the record contains the evidence, and it shows that there was no pretense on the part of the prosecution that the defendant would be guilty if the wife was placed in the house

of prostitution for innocent purposes only. The chief effort of the prosecution was to show that she was there for the purposes of prostitution, and that the defendant had knowledge of the purpose, and not only passively consented thereto, but actively procured her to be there. If the defendant before the trial had presented a demurrer to the information, and had then urged the defect therein which he now suggests, there would have been an opportunity for the court to have directed an amendment of the information, curing the defect. Instead of raising the question at that point in the case, he seeks to gain an advantage by taking the chances of an acquittal upon the trial, and after conviction attempting to get a new trial by reason of the defect which he should have urged before. It is very clear that he was not in any respect prejudiced on the trial by the supposed defect in the information. Section 960 of the Penal Code provides that no information is insufficient, "nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits." And by section 1258 of the Penal Code this court must give judgment "without regard to technical errors or defects, . . . which do not affect the substantial rights of the parties." In view of these provisions we do not think the judgment should be reversed for the alleged defect in the information, even if we concede that the language used does not with certainty state all the facts constituting a public offense.

2. When the wife of the defendant was testifying as a witness the court refused to allow the defendant's attorney on cross-examination to ask if, prior to the time she went to the house in question in this case, she had not been an inmate of a house of prostitution at Martinez conducted by her sister. This ruling is assigned as error. The defendant's argument is, that the question was asked in order to show that she had previously been an inmate of a house of prostitution, and would therefore be more likely to enter the house in question of her own volition, without being influenced by fear of her husband. At the time the court made this ruling there had been no testimony that fear of her husband had caused her to enter the house of prostitution. Such testimony as there was

on the subject of fear was brought out by the defendant's counsel upon subsequent cross-examination. Therefore, we cannot say that the court erred in excluding the testimony. But the fact really sought to be elicited by the question was immaterial. Immediately before the question was asked the witness had testified that she had previously been in "quite a few" houses of prostitution, one of which was a house in Martinez, and the purpose of the question was manifestly to ascertain whether or not this house in Martinez was conducted by her sister. It having been shown that she had previously been in several houses of prostitution, the entire purpose for which the defendant contends had been accomplished, and the mere question whether or not the particular house in Martinez had been conducted by her sister was wholly immaterial.

3. It is contended that the verdict is against law, because the court instructed the jury that a house of prostitution is one in which "two or more women reside and engage in illegitimate sexual intercourse for money," and, further, "a single room may constitute a house of prostitution," and that the evidence shows that the defendant's wife occupied a single room alone. The theory is, that the state is bound by the definition of the law given by the court in its instructions, whether they be right or wrong, and that if the crime proven by the evidence does not measure up to the standard fixed by the court in its instructions, the verdict is against law, and there must be a new trial. We do not think it is necessary to decide whether this theory is correct or not.

The evidence shows that the house in question contained twelve rooms, commonly known as "cribs," each one of which was occupied by a different woman as a place of prostitution for herself alone, and that the wife of the defendant occupied one of them for that purpose. We hold that, under the circumstances, defendant's wife was in a "house of prostitution," within the meaning and intent of the statute under consideration, and hence the verdict was not against law. The fact that the court instructed the jury that the house must be occupied by two or more women would not justify this court or the court below in granting a new trial because there was no proof that a particular room of the house was occupied by more than one woman, if the evidence was otherwise sufficient to justify the verdict.

4. There is the usual claim that the rights of the defendant were prejudiced by misconduct of the district attorney in his closing argument. The misconduct consisted in commenting upon the alleged failure of the defendant to deny that the woman who was placed in the house of prostitution was his wife. Section 1323 of the Penal Code declares that the neglect or refusal of the defendant to be a witness cannot be used against him on the trial. It may be conceded that under this section in general it is not proper for the district attorney to comment on the effect of the failure of the defendant to testify upon any subject connected with the trial, although he may have been a witness and may have testified on other subjects. But the record in this case does not show that the defendant failed to testify on the subject, as his counsel claims. There had been testimony on the part of the prosecution satisfactorily showing that a legal marriage ceremony had been performed between the defendant and the witness Gertrude Mead, and that they had thereafter lived together after the manner of husband and wife. This was sufficient *prima facie* proof that they did sustain that relation. The defendant, while he did not testify expressly on the question whether or not they had been actually married, did testify to several circumstances which would justify the inference that they were living together meretriciously, and not as husband and wife. Thus, he testified that, after coming ashore from a man-of-war about May, 1900, he saw her in a saloon conducted by her sister, and that they had a few drinks together, after which he left her for a time and came back, and had some more drinks with her and went to bed; that he went with her to see her mother and visit her aunt, and was with her pretty much all night; that she said she had done wrong, and asked him to take her back again, promising to conduct herself like a lady and behave and lead a decent life, and that she thought it best for her to go back with him again, and that if he would take her back she would lead a different life; that he saw her again some five weeks later and went from her mother's home down town with her, where they met a man named Rogers, and the three of them went around town for several hours, drinking at several places, and that she again asked him to take her back, and that he promised her to take her back provided she would live decent and quit drinking; that she got

drunk that very night, and he was going to quit her again; that he engaged a room and stayed all night with her; that he rented a room with the intention of making her behave herself, and that after they commenced living together she behaved herself about a week, and then began carousing and drinking, and the next thing he knew she was in a crib; that he had not had anything to do with her for about three weeks previous to his arrest. Under this testimony the jury might have inferred either that he was taking her back to live with him again as a paramour, or that as a husband he was condoning her offense and taking her back to live with him as his wife. Under this very equivocal testimony of the defendant himself, if there was any contention on the part of the defense that the defendant was not her husband, there was no impropriety in the district attorney commenting upon the fact that he had made no express denial of the fact. If the jury should take one of the possible inferences, the effect would be, that he had, by his testimony as a whole, denied by implication that she was his wife. If the other inference were adopted, the effect would be that his testimony would be considered as an admission of their marital relations. The prosecution was justified in calling the attention of the jury to the vague character of his testimony on the subject, and the absence of an explicit denial.

5. The last point made by the defendant is as follows: "The court erred in refusing defendant's proposed instructions Nos. 3, 6, and 7 (folios 40 to 44 inclusive)." We cannot dignify this portion of the brief by styling it an argument. It does not justify any consideration of the errors supposed to be presented thereby.

The judgment and order are affirmed.

Angellotti, J., and Van Dyke, J., concurred.