[Crim. No. 2411. In Bank.—May 20, 1922.]

## THE PEOPLE, Respondent, v. E. N. SANDERS, Appellant.

[1] CRIMINAL LAW—EXTORTION—THREATENED ACCUSATION OF VIOLATION OF FEDERAL STATUTES — SUFFICIENCY OF INDICTMENT.—An indictment charging that defendants threatened to accuse a named person of "the crime of engaging in the sale of intoxicating liquors in violation of the United States statutes" sufficiently charges the crime of extortion as defined in sections 518 and 519 of the Penal Code, without specifically describing the threatened crime, where on the date of the alleged threat it was unlawful to sell intoxicating liquors for beverage purposes under the War Prohibition Act and there was also in existence the Reed amendment to the Postoffice Appropriation Act, making it a crime to cause intoxicating liquors to be transported in interstate commerce into any state whose laws prohibited the manufacture or sale therein of intoxicating liquors for beverage purposes.

[2] ID.—THREATENED INCARCERATION — SUFFICIENCY OF INDICTMENT.—In the absence of a demurrer and in view of the provisions of subdivision 2 of section 950 of the Penal Code, an indictment charging that defendants threatened to "incarcerate" the complaining witness in the county jail unless he paid defendants a certain sum of money sufficiently charges a threat "to do an unlawful injury to the person" of such witness under subdivision 1 of section 519 of the Penal Code, where it is also alleged that the

---

1. Threat to accuse of crime as criminal offense of extortion, notes, 116 Am. St. Rep. 450, 458; 9 Ann. Cas. 196; Ann. Cas. 1917B, 134.

defendants did "willfully, unlawfully, corruptly, knowingly and feloniously extort and obtain" such money, and that the arrest and detention of the witness was "unlawful and without any justification," and that the witness "solely by reason of said force, unlawful injury, threats, belief and fear" paid the money to defendants.

[3] ID.—SUFFICIENCY OF EVIDENCE.—In this prosecution for extortion, the evidence is sufficient to establish the charges that the defendant extorted the money from the complaining witness by the threat to accuse him of a crime and the threat to incarcerate him in the county jail.

[4] ID.—THREAT TO DO UNLAWFUL INJURY — EVIDENCE.—A threat to incarcerate the complaining witness in the county jail upon his pretended arrest by the defendant, a police officer, pursuant to a conspiracy with others, to extort money from the witness, constitutes a threat to do an unlawful injury to the person within the meaning of subdivision 1 of section 519 of the Penal Code.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Louis G. Guernsey, W. I. Gilbert, Paul W. Schenck and Richard Kittrelle for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

RICHARDS, J., *pro tem.*—The appellant herein was tried and convicted upon the charge of extortion. In his appeal from the judgment entered upon such conviction he makes two main contentions as grounds for the reversal of such judgment. These are, first, insufficiency of the indictment; second, insufficiency of the evidence to sustain the verdict and judgment of conviction.

The defendant, with three other persons, whose names were Claude Morton, William W. Swan, and Lee Varain, were accused by the grand jury of the county of Los Angeles, by indictment, of the crime of extortion. The charging part of said indictment, which the appellant claims to be insufficient to charge said crime, reads as follows:

"The said Claude Morton, E. N. Sanders, William W. Swan and Lee Varain, on or about the 19th day of August,

1919, at and in the County of Los Angeles, State of California, did willfully, unlawfully, corruptly, knowingly and feloniously extort and obtain from Thomas M. Quinlin, with the consent of said Thomas M. Quinlin, Five Hundred Dollars ($500.00) in lawful money of the United States, which said Five Hundred Dollars ($500.00) was then and there the personal property of the said Thomas M. Quinlin.

"The said Five Hundred Dollars ($500.00) was obtained from the said Thomas M. Quinlin, and the consent of the said Thomas M. Quinlin was induced by a wrongful use of force and fear, in that the said Claude Morton, E. N. Sanders, William W. Swan and Lee Varain did then and there unlawfully, and without any legal justification, arrest and detain the said Thomas M. Quinlin, and did then and there threaten to accuse him, the said Thomas M. Quinlan, of a crime, to wit, the crime of engaging in the sale of intoxicating liquors in violation of the United States statutes, and did then and there threaten to incarcerate the said Thomas M. Quinlan in the County Jail of the County of Los Angeles unless he, the said Thomas M. Quinlin, did then and there pay to them, the said Claude Morton, E. N. Sanders, William W. Swan and Lee Varain, the said Five Hundred Dollars. ·

"The said Thomas M. Quinlin did then and there believe that the said Claude Morton, E. N. Sanders, William W. Swan and Lee Varain would enforce and carry out said threats, and then and there feared that the said defendants, Claude Morton, E. N. Sanders, William W. Swan and Lee Varain, would and could do so, and solely by reason of said force, unlawful injury, threats, belief and fear, did then and there consent as aforesaid, to the payment, as aforesaid, of said Five Hundred Dollars ($500.00), to the said defendants, Claude Morton, E. N. Sanders, William W. Swan and Lee Varain, and did then and there, on account of the said force, unlawful injury, threats, belief and fear, pay and deliver to the said defendants, Claude Morton, E. N. Sanders, William W. Swan and Lee Varain, said Five Hundred Dollars, as aforesaid."

It is the appellant's contention that the foregoing language in said indictment fails to sufficiently charge him with the crime of extortion as defined in sections 518 and 519

of the Penal Code. These sections of the code read as follows:

518. "Extortion is the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right."

519. "Fear, such as will constitute extortion, may be induced by a threat, either:

"1. To do an unlawful injury to the person or property of the individual threatened, or to any relative of his, or member of his family; or,

"2. To accuse him, or any relative of his, or member of his family, of any crime; or,

"3. To expose, or impute to him or them any deformity or disgrace; or,

"4. To expose any secret affecting him or them."

[1] The appellant contends that the foregoing language of said indictment does not sufficiently set forth any threat on the part of the appellant or his associates, either to (1) accuse the prosecuting witness of any crime, or (2) to do an unlawful injury to his person; or (3) to expose or impute to him any deformity or disgrace; or (4) to expose any secret affecting him. The third and fourth of the specifications may be dismissed without comment as beyond the scope of said indictment. As to the second of said specifications the appellant contends that there is not to be found within the language of said indictment a threat to accuse Quinlin of any crime. The particular clause in the indictment thus attacked alleges that the said defendants "did then and there threaten to accuse him, the said Thomas Quinlin of a crime, to-wit, the crime of engaging in the sale of intoxicating liquors in violation of the United States statutes." The date fixed in said indictment upon which said alleged threat was made was August 19, 1919, and the proofs correspond to said date. This was prior to the time the so-called Volstead Act (41 Stat. 305) went into effect. It is, therefore, obvious that the indictment did not include or contemplate the charge of a threat to accuse the prosecuting witness of the violation of a federal statute which had not yet come into being. There were, however, in being at that time, several other federal statutes which it would have been a crime for the defendant Quinlin to have violated. One of these was an act of Congress commonly

known as the War Prohibition Act. (Fed. Stats. Ann. 1919, p. 199 [U. S. Comp. Stats. Supp. 1919, p. 2678].) By the terms of said act it was made unlawful to sell intoxicating liquors for beverage purposes, but the sale of such liquors for export or for sacramental, medicinal, or other than beverage uses was not made unlawful by said act. There was also in existence at that time the federal act commonly known as the Reed amendment to the Postoffice Appropriation Act of March 3, 1917 (U. S. Comp. Stats. Ann. Supp. 1919, sec. 8739a), making it a crime for any person to "order, purchase or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal and mechanical purposes, into any state or territory the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes." There were also other federal statutes then in being such as the statute forbidding the sale of liquor to Indians and the like the violation of which would be a crime. As to these then existing federal statutes the appellant argues that the alleged threat to accuse the prosecuting witness of selling liquors would not suffice to amount to an accusation of a crime because under these several statutes liquor could be sold or transported legally, as, for instance, for export or sacramental or medicinal purposes, under the War Prohibition Act; and hence, that in order to accuse a person of the crime of selling liquors it was necessary to state in the accusation that the accused person was charged with selling liquors for beverage purposes. In making this contention the appellant relies strongly upon the case of *People* v. *Hoffman,* 126 Cal. 366 [58 Pac. 856], in which the threat set forth in the information and upon which the charge of extortion was founded was to accuse the prosecuting witness of the crime of selling diseased and unwholesome meat. This court in reversing the judgment of conviction based upon such information stated that the act of selling diseased and unwholesome meat was not of itself a crime, but only became so when knowingly sold with intent that it should be eaten, and that it should have appeared in the information that the defendant had threatened to accuse the other with having knowingly sold diseased and unwholesome meat with intent that it should be eaten in order to constitute an accusation of a crime. We do not

think this case has the direct or compelling application to the instant case which the appellant claims for it. The questions presented in that case arose upon a demurrer to the information, while in the instant case no objection by demurrer or otherwise was presented. In the case at bar the threatened accusation was not merely one of selling liquors. The threat was that the prosecuting witness was to be accused of "the crime of engaging in the sale of intoxicating liquors in violation of the United States statutes." Assuming that that intended accusation was based upon the provisions of the War Prohibition Act, it would amount to an accusation of a sale of such liquors to such persons and for such purposes as would constitute a violation of the terms of said act, and hence the persons so threatened could not have understood said accusation to refer to the sale of liquors for export or sacramental or medicinal or other innocent uses, since such a sale would not have been in violation of said act. A case which seems to be precisely in point is that of *State* v. *Blackington,* 111 Me. 229 [88 Atl. 826], in which an indictment wherein the threatened accusation was "the crime of the sale of intoxicating liquor in violation of the law." This the court held sufficient to satisfy the terms of a statute defining the crime of extortion substantially in the form of section 519 of our Penal Code. It is to be noted at this point that a clear distinction is to be drawn between indictments or informations which directly charge a defendant with a crime and which must be exact and specific both in the definition of the crime and in the elimination of all exceptions which would render the acts charged not criminal and those indictments or informations which charge extortion through threats to accuse another of a crime. In the latter class of cases no such technical accusation is required as in the former, for several obvious reasons, some of which are that the indictment or information cannot go beyond the terms of the threatened accusations and the accusations need only be such as to put the intended victim of the extortion in fear of being accused of some crime. The more vague and general the terms of the accusation the better it would subserve the purpose of the accuser in magnifying the fears of his victim, and the better also it would serve to protect him in the event of the failure to accomplish his extortion and of a prosecution

for his attempted crime. (*State* v. *Blackington, supra; Commonwealth* v. *Murphy,* 94 Mass. (12 Allen) 449; *Commonwealth* v. *Goodwin,* 122 Mass. 19; *Commonwealth* v. *Bacon,* 135 Mass. 521; *State* v. *Patterson,* 231 Mo. 99 [196 S. W. 3].) We are, therefore, of the opinion that the indictment was sufficient in its statement of the accusation of a crime in fear of which the prosecuting witness consented to part with his money. (*People* v. *Fuski,* 49 Cal. App. 4 [192 Pac. 552].)

[2] There is in this indictment a further allegation of an additional threat inducing the fear on the part of the prosecuting witness through which the alleged extortion was accomplished. It consists in the allegation that the defendants "did then and there threaten to incarcerate the said Thomas M. Quinlin in the county jail of the County of Los Angeles unless he, the said Thomas M. Quinlin did then and there pay to them, the said Claude Morton, E. N. Sanders, William W. Swan and Lee Varain etc." The sufficiency of this averment is also called in question by the appellant, who contends that it is insufficient for the reason that the threat contained therein is not alleged to be a threat "to do an unlawful injury to the person" of the individual threatened, and hence is insufficient to satisfy the requirements of subdivision 1 of section 519 of the Penal Code, above quoted. It may not be denied that a threat to imprison another is a threat to do an injury to his person. It is such an injury that, if unlawful, would give grounds for both a civil action for damages and a criminal prosecution for false imprisonment. In order, however, to constitute such a threat as will lay the foundation for a charge of extortion under subdivision 1 of section 519 of the Penal Code, it must be a threat "to do an unlawful injury" to the person of another, and hence the indictment which charges such extortion must set forth that such threat on the part of the defendant was a threat to do an "unlawful" injury to the person of the alleged victim of the extortion. The appellant herein contends that the language of the indictment as to such threat above quoted is insufficient because of its failure to allege that the threat to incarcerate Quinlin in the county jail was a threat to do him "an unlawful injury." It is the absence of the word "unlawful" from said clause in the indictment which, according

to the appellant, renders it fatally defective. The conten-
tion of the appellant is sound in so far as it goes to the
extent of requiring that the defendant must show that the
alleged threat was a threat to do an unlawful injury to the
person of the complaining witness. It does not, however,
follow that the statement or showing that the threatened
injury was unlawful should appear in immediate context
with the phrasing of the threat. If, from the face of the
indictment, read as a whole, it sufficiently appears that the
injury threatened to be done to the complaining witness
was an unlawful injury, the indictment will be upheld, par-
ticularly as against an assault made against its sufficiency
for the first time upon appeal. Looking to this indictment
as a whole the following phrases therein may be emphasized
as bearing upon the question as to whether the threat to
incarcerate Quinlin in the county jail was sufficiently al-
leged to be a threat to do an unlawful injury to his person.
The indictment begins by charging that the defendants ''did
unlawfully, corruptly, knowingly, and feloniously, extort
and obtain from Thomas M. Quinlin etc.'' This court, in
construing the words ''willfully, unlawfully, and feloni-
ously,'' as thus set forth in an information, in connection
with the charge of a particular crime, said: ''The words
willfully, unlawfully and feloniously must be given some
effect in construing such language and they certainly would
exclude an act which by law was innocent. The utmost that
may be said in criticism of this information is that it may
not be direct and certain as to the particular circumstances
of the offense. Such an objection is waived by a failure to
demur.'' (*People* v. *Mead*, 145 Cal. 500 [78 Pac. 1047].)
But the indictment herein goes further. It alleges that the
arrest and detention of Thomas M. Quinlin by the defend-
ants was ''unlawful and without any justification,'' and
that said Quinlin, ''solely by reason of said force, unlaw-
ful injury, threats, belief, and fear did then and there con-
sent,'' etc., and ''did then and there on account of said
force, unlawful injury, threats, belief and fear, pay,
etc.'' We think the indictment sufficient, in the absence
of a demurrer thereto, to constitute the charge of a threat
to do an unlawful injury to the person of Quinlin on the
part of these defendants. Section 950 of the Penal Code
provides that ''the indictment or information must contain:

2, a statement of the facts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended.'' This indictment charges that these defendants did ''willfully, unlawfully, corruptly, knowingly and feloniously extort and obtain from Thomas M. Quinlan'' with his consent a sum of money which was obtained and his consent thereto induced by ''a wrongful use of force and fear'' in that these defendants ''did unlawfully and without legal justification arrest and detain said Thomas M. Quinlin and did then and there threaten to accuse him of a crime . . . and did then and there threaten to incarcerate the said Thomas M. Quinlin in the county jail'' unless he would pay to them a certain sum of money; and that said Thomas M. Quinlin, believing and fearing that said defendants would enforce and carry out said threats ''and solely by reason of said force, unlawful injury, threats, belief and fear,'' did then and there consent to the payment of, and did pay, said sum of money. We think it must be admitted that persons of common understanding construing the foregoing words and phrases of the indictment according to their usual acceptance in common language would understand that they were being charged with the extortion of the said money from said Quinlin through fear induced by the threat of an unlawful incarceration. The utmost that can be said in criticism of this indictment in this particular is that it may not be direct and certain as to the particular circumstances of the offense. Such an objection would be waived by failure to demur. (Pen. Code, sec. 1012; *People* v. *Mead, supra.*) If it is claimed by the defendant that this indictment embraces two different threats, viz., a threat to accuse Quinlin of a crime indictable under subdivision 2 of section 519 of the Penal Code, and a threat to do an unlawful injury to his person indictable under subdivision 1 of said section, and that it cannot be ascertained to which of these the above-quoted language of the indictment had application, the answer still remains that this constituted at most a mere uncertainty which could only be taken advantage of by demurrer or motion to have these two charges, if they be such, separately stated.

[3] The next contention of the appellant is that the evidence is insufficient to establish either of these two charges.

As to the first of these, viz., that the defendant extorted said money from Quinlin by the threat to accuse him of a crime, we are of the opinion that the contention of the defendant cannot be sustained. The record herein discloses that the defendant in arresting and detaining Quinlin posed and pretended to be acting as a federal officer and that as such he so arrested and detained Quinlin in the night-time and without warrant or other authority so to do. Quinlin testified that during the course of his said arrest and detention the defendant stated that ''he had a charge against me of selling liquor, shipping liquor into Arizona, Washington, Idaho, and Nevada.'' He also testified that Sanders said that ''he had enough on me to give me two or three years at McNeill's Island.'' He further testified that one or the other of the defendants threatened to accuse him of ''shipping liquor into dry territory and selling whisky illegally.'' It is true that these statements of the prosecuting witness are not couched in the precise language of the indictment, but taken together and, as we have seen, uttered by the defendant while he was posing as a federal arresting officer, we think they fairly import a threat to accuse Quinlin of participating in the sale and transportation of liquors into dry territory in violation of the federal statutes then in being, making such acts a crime. What has been heretofore said with reference to the vagueness of such an accusation has application to its proofs. All that was necessary by way of definiteness in such proof was, first, that they should be sufficient to come fairly within the scope and terms of the indictment; and, second, that they should be sufficiently definite to advise a person of ordinary intelligence that he was being threatened with an accusation of having committed a violation of the federal laws then in being relative to the sale and shipment of intoxicating liquors. We think the foregoing testimony sufficient to measure up to both of these requirements under the rules laid down in *People* v. *Mead, supra,* and hence that the defendant's contention that the evidence was insufficient to justify his conviction upon this particular charge cannot be sustained.

The appellant's next contention is that the evidence is insufficient to sustain the charge in the indictment that the defendants threatened to do an unlawful injury to his person through an alleged threat ''to incarcerate him in the

188 Cal.—48

county jail.'' An examination of the record in this regard also fails to support this contention. The evidence abun, dantly shows that of the defendants charged jointly with extortion by this indictment, E. N. Sanders, the appellant herein, was, at the time of said alleged extortion, a police officer of the city of Los Angeles, as was also one of his codefendants, W. W. Swan; that of the other two defendants Lee Varain was an acquaintance of Quinlin, who, by reason of such acquaintanceship and pretended friendship, was made use of by his codefendants to aid in the accomplishment of said crime; that the other codefendant, Claude Morton, was the attorney of said Varain. These four defendants conspired together to extort money from Quinlin, whom they knew had money, which to the extent of $1,000 he usually carried upon his person; and whom they also knew to be vulnerable as having been, or suspected of being, engaged in questionable enterprises in respect to the sale of liquor. In pursuance of this conspiracy Sanders on the evening of August 19, 1919, accosted Quinlin as he was coming out of the hotel, telling him that he was an officer, that he, Quinlin, was under arrest. He had no warrant and Quinlin had committed no offense for which he could be legally arrested without a warrant. The defendant did not tell Quinlin at the time what he was under arrest for but took him to a tea room kept by Varain, where they were joined by Swan. The defendant indicated to Varain that he, Varain, was also to be arrested and that both were about to be taken to the county jail. Varain said he would like to visit his lawyer and the trio were then driven to the office of the defendant Morton, whom Varain first interviewed alone, while Quinlin and Sanders remained in the anteroom, and during which time Sanders told Quinlin that ''he had plenty on him and that he had better get a thousand dollars.'' Presently Morton emerged and asked if he could see Varain and Quinlin alone and was allowed to do so and when they were together in Morton's inner office Varain began to play his part by pleading that he could not afford to be arrested again as he had one charge against him already. He thus succeeded in getting Quinlin to agree that Morton should act as the lawyer for both of them and go out and see if he could fix it with Sanders. He went outside and soon returned and reported that the

officer said he had "plenty on Quinlin and had different charges, shipping liquor into different states, dry territories"; whereupon Varian began to suggest giving money to fix the officer up to $500, to which Quinlan finally agreed; whereupon Morton again went outside and came back saying, "Well, if you will give him a thousand dollars apiece, you can both go to hell as far as he is concerned." Quinlin had only $320 on his person but was allowed to send a messenger to his wife for $250 more. While these proceedings were going on Swan again appeared on the scene with a bottle of whisky and they were all together in Morton's office when the final arrangements were made, by which Varain gave his check for $500 and Quinlin paid over to Morton $500 in money, agreeing to bring the other $500 to his office on the following day. Thereupon the parties separated. [4] Was the threat to incarcerate Quinlin in the county jail, uttered under the foregoing circumstances, a threat to do an unlawful injury to his person within the meaning of subdivision 1 of section 519 of the Penal Code? We think this question must be answered in the affirmative. The conspiracy entered into between this defendant and his codefendants to extort money from Quinlin by means of his pretended arrest and by the threat of his incarceration was itself unlawful and a crime under several of the subdivisions of section 182 of the Penal Code. The arrest and detention of Quinlin by the defendant was an unlawful arrest in that it was made without a warrant and, so far as the record discloses, was an arrest based upon no pretense of any legal right in the arresting officer to make such arrest without a warrant under the provisions of section 836 et seq. of the Penal Code, or under any other provision of law. The utmost which the defendant and his co-conspirators assert upon the trial as a justification for Quinlin's arrest and detention was that he was suspected of certain acts in relation to the selling or shipment of liquor in violation of the United States statutes then in force; but these acts, even if there was any foundation for their existence, were not pretended to have been committed or attempted in the presence of the arresting officer or of any other of said defendants, and in addition to this were merely misdemeanors, for the commission of which the arrest without a warrant could not lawfully be made. Having thus unlawfully arrested and de-

tained their intended victim the defendants proceeded to threaten to accuse him of a crime. It is quite immaterial whether they or any of them in making said threat knew or suspected, or had any reason to know or suspect, that said Quinlin had committed the particular offense of which they threatened to accuse him, since it was unlawful to make or employ such a threat for the purpose of extortion. (*People* v. *Beggs,* 178 Cal. 79 [172 Pac. 152].) Having thus unlawfully arrested said Quinlin and thus far unlawfully detained him in custody, and having thus further unlawfully threatened to accuse him of a crime, the defendants proposed to carry their unlawful conspiracy and conduct one step further by the threat to imprison Quinlin in the county jail. Thus it will be seen that this threat of incarceration had its inception in unlawfulness and was but the last of a series of unlawful acts having for their object the creation of the wrongful fear in the mind of their victim sufficient to induce his consent to part with his money. The appellant however, contends that this threat to incarcerate Quinlin in the county jail, although made under the foregoing circumstances, was not a threat to do "an unlawful injury" to the latter's person, for the reason that said defendants might lawfully have brought about Quinlin's incarceration in the county jail through the process of a complaint charging him with some offense and through the issuance and execution of a warrant for his arrest and confinement in jail. In making this contention the appellant strongly relies upon the case of *People* v. *Schmitz,* 7 Cal. App. 330 [151 L. R. A. (N. S.) 717, 94 Pac. 407], and particularly upon the opinion of this court in denying the petition for a rehearing in that case. It is to be noted, however, that the questions discussed in that case arose upon the face of the indictment and related solely to its sufficiency as charging a threat to do an unlawful injury to the property of the persons complaining. This court in that case decided that the term "unlawful injury" as used in section 519, subdivision 1, of the Penal Code had reference to injuries of such a character that if committed as threatened would have constituted an actionable wrong, and further held that the indictment in that case did not sufficiently show that the acts threatened, as stated therein, were not such as could and would have been lawfully done; and that in order to

render an act which a person might lawfully do an unlawful injury to the person or property of another, such act must be threatened to be done by means which the law denounces as unlawful. As illustrating and distinguishing this principle the court referred to the two cases of *Boyson* v. *Thorne,* 98 Cal. 578 [21 L. R. A. 233, 33 Pac. 492], and *People* v. *Hughes,* 137 N. Y. 37 [32 N. E. 1105]. In commenting upon the latter of these two cases this court briefly recited the facts therein showing that the defendant Hughes, the head of a labor organization, in order to extort a sum of money from certain wholesale merchants, threatened to induce certain retail merchants to continue in force a boycott of their institution and of the use of their goods by such retailers after the cause for creating the boycott had been removed. This he proposed to accomplish through an improper exercise of his influence with said retailers and through false representations and deceit. This court adopted the views of the New York court in saying that while it was true that the retailers had a lawful right to withhold their custom, and while it was also true that Hughes had a lawful right by proper means to induce them so to do, that his threat was nevertheless a threat to do an unlawful injury to the property of those from whom he sought to extort the money, because the means to be employed by him were unlawful. In the text of the particular case thus referred to the New York court of appeals says: "What Hughes threatened was found by the jury to be such an unlawful injury. They saw that he conveyed the idea strongly and clearly that, unless his demand for money was complied with, he could and would, by threatening the hostility of the order, compel the retail dealers to withdraw their custom and could and would utilize the power he had, although the original occasion for its exercise was gone. Such a threat, within the doctrine of the Barondess case, and within that, also, of the dissenting opinion in this court, amounts to a threat to do an unlawful injury to property. (*People* v. *Barondess,* 133 N. Y. 649 [31 N. E. 240]; 61 Hun, 581 [16 N. Y. Supp. 436].) There was therefore a question for the jury, and the court could not properly have directed an acquittal." This language is peculiarly appropriate to the case at bar. The threat which the defendant and his associates made, to incarcerate Quinlin

in the county jail, must be taken and understood by us as it would be naturally taken and understood by the person to whom it was uttered under the immediate circumstances of the case. He had been unlawfully arrested, he was being unlawfully detained, and being thus already unlawfully imprisoned he was being threatened with being immediately taken to jail. Had the threat been literally carried into effect as uttered under the immediate circumstances and conditions of the case it would have constituted merely a continuance of the false and unlawful detention to which the person threatened was being subjected at the very moment when the threat was being made. When these facts are considered in connection with the further facts that Quinlin's unlawful arrest and detention as thus far consummated were the result of an unlawful conspiracy between this defendant and his codefendants to accomplish the crime of extortion by the aforesaid unlawful means and that the threat of his incarceration was but a further step in the consummation of the said crime, and was not intended by these conspirators to be rendered legal by compliance with the usual forms of law or indeed to be carried into effect at all, except so far as the threat of its execution was to be used as a means for accomplishing the crime of extortion, it would seem to be perfectly clear and in line with the foregoing cases that such a threat, when viewed in the light of its attending circumstances, constituted a threat to do an unlawful injury to the person of him against whom it was directed. The jury to which these facts were presented evidently so regarded it, and we are of the opinion that their verdict to that effect was fully sustained by the evidence in the case.

The judgment is affirmed.

Shaw, C. J., Wilbur, J., Waste, J., Sloane, J., Lawlor, J., and Shurtleff J., concurred.