772 P.2d 377

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Joseph M. ASHLEY, Defendant–Appellant.**

**No. 10661.**

Court of Appeals of New Mexico.

March 7, 1989.

Certiorari Denied April 18, 1989.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Defendant appeals the revocation of his probation by the district court. We discuss his claim that the evidence was insufficient to support the district court's finding that he committed extortion and deal summarily with his remaining contentions. We affirm the revocation, but not without some unease about the scope of the statutory definition of extortion, which the legislature may wish to address.

We view the evidence in the light most favorable to the state. *See State v. Tovar,* 98 N.M. 655, 651 P.2d 1299 (1982). The victim, Charles DeOurso, was looking for an investor to help him buy the building in which he leased space for his Albuquerque health club. A business acquaintance of DeOurso's introduced him to defendant as someone who might help. At their first meeting defendant told DeOurso that he was involved with some "very heavy people, powerful people," and he could buy the building. Defendant then contacted the owner of the building, who told him that the purchase price would be 1.3 million dollars cash. Defendant told DeOurso that "his people" could come up with the money. He offered DeOurso a 49% ownership interest in the building, but said he would need $3,500 to fly him and his bodyguard to meet with his people in the Bahamas, return to Albuquerque, and then go to Colorado Springs to pay the building owner.

When DeOurso expressed doubt about his ability to raise $3,500, defendant said if DeOurso did not come up with the money, defendant would go ahead with the deal and run DeOurso out. Defendant told DeOurso that as soon as defendant bought the facility, DeOurso would be evicted. Defendant said he did not care about the health club or its members, that he would close the club, allow gambling and prostitution there, and "burn" everybody to whom DeOurso owed money. Defendant visited the club several times, telling employees he would soon be the boss and that it might not be a club any more. DeOurso and his employees felt threatened and feared that defendant would take over the club. The dealings ended after DeOurso contacted his attorney and the police. Evidence admitted at the hearing would support a finding that defendant did not have access to 1.3 million dollars.

New Mexico's extortion statute provides:

> Extortion consists of the communication or transmission of any threat to another by any means whatsoever with intent thereby to wrongfully obtain anything of value or to wrongfully compel the person threatened to do or refrain from doing any act against his will.
>
> Any of the following acts shall be sufficient to constitute a threat under this section:
>
> A. a threat to do an unlawful injury to the person or property of the person threatened or of another;
>
> B. a threat to accuse the person threatened, or another, of any crime;
>
> C. a threat to expose, or impute to the person threatened, or another, any deformity or disgrace;
>
> D. a threat to expose any secret affecting the person threatened, or another; or
>
> E. a threat to kidnap the person threatened or another.

NMSA 1978, § 30-16-9 (Repl.Pamp.1984).

The state relies on subsection A, contending that defendant threatened an unlawful injury to the property of DeOurso. Defendant answers that the injury threatened was not *unlawful.*

We need not decide if a threat just to sue for eviction could constitute "a threat to do an unlawful injury." *Cf. I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984) (threat to sue could not form basis for violation of federal extortion statute, the Hobbs Act, 18 U.S.C. § 1951). Defendant never specifically mentioned a lawsuit. DeOurso testified that the threat was to "run me out."

Nevertheless, defendant argues that it is lawful for a landlord to breach a lease and then pay damages to, in effect, buy his way out of the lease. He relies on California precedent. California's extortion statute, Cal.Penal Code §§ 518, 519 (West 1988), is similar to ours, and prohibits threats "[t]o do an unlawful injury to * * * property * * * *" Defendant cites *People v. Schmitz*, 7 Cal.App. 330, 94 P. 407 (1908), *aff'd*, 7 Cal.App. 330, 94 P. 419 (1908), for the proposition that threatening a lawful act is not extortion. He points to an example *Schmitz* provides of a property owner who threatens to build a stable on his own land unless his neighbor pays him $1,000. Because the property owner had the right to build the stable, his threat would not constitute extortion. 7 Cal.App. at 368, 94 P. at 419.

Contract law does not, however, recognize a "right" of a party to a contract to breach the contract and compel the other party to resort to the courts to obtain a remedy. Defendant was not negotiating with DeOurso to purchase his leasehold rights. In the context of extortion we do not equate (1) performing the contract and (2) paying a judgment for damages for breach. *See* T. Robison, *Enforcing Extorted Contract Modifications*, 68 Iowa L.Rev. 699, 706 ff. (1983). *Cf. First Nat'l Bank in Clayton v. Wood*, 93 N.M. 467, 601 P.2d 437 (Ct.App.1979) (Wood, C.J., concurring) (bank had no legal *right* to refuse to honor obligation to lend money unless borrower guaranteed third party's debt). California authority supports this view. In affirming the court of appeals' decision in *Schmitz*, the California Supreme Court stated that the term "unlawful injury," in its broadest meaning,

> can include no injury that is not of such a character that, if it had been committed as threatened, it would have constituted an actionable wrong, an injury for which an action for the resultant damages could be maintained against the defendant, or which, if merely threatened, could be enjoined in equity if the remedy at law were deemed inadequate.

7 Cal.App. at 370, 94 P. at 420. Thus, apparently the California Supreme Court would include breaches of contract within the meaning of "unlawful injury." *See People v. Sanders*, 188 Cal. 744, 756–757, 207 P. 380, 385–386 (1922) ("unlawful injury" includes actionable wrongs).

Such an interpretation of "unlawful" also finds support in a comment of the official reporter to the Model Penal Code (1980) provision on extortion, Section 223.4. In explaining the merits of the provision, the comment criticizes the language "any illegal act injurious to character, person, or property" found in some extortion statutes, because the words "would appear to embrace breach of contract and similar conduct for which a civil remedy is available." § 223.4 at 210.

New Mexico cases interpreting the word "unlawful" in the context of a criminal prosecution have given it a broad reading. In a murder prosecution the New Mexico Supreme Court said that "unlawful" means "not authorized by law" and "is equivalent to 'without excuse or justification.'" *State v. Noble*, 90 N.M. 360, 364, 563 P.2d 1153, 1157 (1977). The supreme court cited *State v. Chenault*, 20 N.M. 181, 147 P. 283 (1915) (fornication with a minor is "unlawful sexual intercourse," although fornication was not a statutory or common law crime; "unlawful" means "not authorized by law") and *Territory v. Gonzales*, 14 N.M. 31, 89 P. 250 (1907) ("unlawful" means "without excuse or justification" in prosecution for assault with a deadly weapon). These authorities suggest that what defendant threatened was an "unlawful injury." De-

fendant would have had no excuse, justification, or lawful authority to carry out his threat to run DeOurso out.

Yet interpreting "unlawful" to include a mere breach of contract raises serious public policy concerns. The reporter's comment to Model Penal Code Section 223.4 states: "It is clearly unwarranted to permit an extortion charge in [the context of a contractual relationship], where breach and renegotiation to avoid breach are a normal part of ordinary business dealings." *Id.* at 210. We question whether the legislature would want a "threat" made in the course of a commercial dispute to become the basis for a criminal prosecution (or even a civil racketeering suit, *see* NMSA 1978, § 30–42–3(A)(12) (Supp.1988)), just because a court later determined that the action threatened would violate the parties' contract.

Such a result might be avoided by a narrow construction of the word "wrongfully" in the statutory requirement that to constitute extortion a threat must be "with intent thereby to wrongfully obtain anything of value." The United States Supreme Court in *United States v. Emmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), held that union members did not "wrongfully" use force, as required for a violation of the Hobbs Act, 18 U.S.C. § 1951, when their destruction of the employer's property was for the purpose of obtaining higher wages for their work. The Court distinguished that purpose from a wrongful purpose to obtain personal payoffs for union officials or "wages" for unwanted services. Following this approach, often a threatened breach of contract would not be "wrongful." Defendant would not benefit, however, because he fails to contend that his intent was not wrongful, and the evidence would sustain a finding of wrongful intent; defendant's purpose was solely to extract DeOurso's money, which defendant would pocket without any prospect of purchasing the building.

Still, our concern about incorporating every breach of contract within the meaning of "unlawful injury" in the extortion statute leads us to rest affirmance in this case on a different ground. The action threatened by defendant was more than a breach of contract; it was a tort. *Restatement (Second) of Property*, Section 14.2(1) (1977) states:

> If the controlling law gives the landlord, or an incoming tenant, a speedy judicial remedy for the recovery of possession of leased property from a tenant improperly holding over after the termination of the lease, neither the landlord, nor the incoming tenant, may resort to self-help to recover possession of the leased property from such tenant, unless the controlling law preserves the right of self-help.

Comment e to that section states that resort to self-help in violation of Section 14.-2(1) is a tort. *A fortiori* use of self-help to oust a tenant *before* termination of the lease is tortious.

New Mexico law satisfies the condition of Section 14.2(1) that it supply a speedy judicial remedy for recovery of possession. *See* NMSA 1978, §§ 35–10–1 to –6 (Repl. Pamp.1988) (forcible entry or unlawful detainer statute). Although we have found no New Mexico holding that adopts the doctrine stated in the *Restatement, supra,* Section 14.2(1), the following dictum is strongly suggestive:

> The purpose of the [forcible entry and unlawful detainer] statute is, regardless of the actual condition of the title to the property, to prevent parties from taking the law into their own hands, and ousting one in the quiet and peaceable possession of lands and tenements, whether his possession is rightful or wrong. The policy of the law in this class of cases is to prevent breaches of the peace, to forbid any person righting himself by his own hand and by violence, etc., and to require that the party, who has obtained possession in contravention of the law, to restore it to the party from whom it has been so obtained. When parties are in STATU QUO, or in the same position as they were before the use of such prohibited means, *the party out of possession must resort to legal means to obtain his possession,* as he should have done in the first instance.

*Murrah v. Acrey*, 19 N.M. 228, 232, 142 P. 143, 144 (1914) (emphasis added). *Accord Heron v. Ramsey*, 45 N.M. 491, 494, 117 P.2d 247, 249 (1941). Even if self-help by a landlord is tortious in New Mexico only when the landlord breaches the peace, the trial judge readily could have concluded that there was no limitation of "peaceableness" in defendant's threat to run DeOurso out.

We hold that defendant's threat was a threat of "unlawful injury" because the act threatened was a tort. The legislature may wish to clarify whether "unlawful injury" encompasses a mere breach of contract.

■ We deal summarily with defendant's other contentions. His probation could be revoked while he was serving the custodial portion of his sentence. *State v. Padilla*, 106 N.M. 420, 744 P.2d 548 (Ct. App.1987). His presentence confinement credit should be applied against his entire sentence, not each separate conviction. *State v. Aaron*, 103 N.M. 138, 703 P.2d 915 (Ct.App.1985). We need not address defendant's contentions that his revocation could not be based on allegations of a threat to injure a person, associating with a person having a criminal record, or attempted fraud, because the state did not rely on such allegations for revocation of defendant's probation. Moreover, our affirmance of the revocation on the basis of a threat of unlawful injury to property moots consideration of any other potential basis for revocation.

We affirm the revocation of defendant's probation and the sentence imposed.

IT IS SO ORDERED.

ALARID, J., concur.

APODACA, J., specially concurs.

APODACA, Judge, specially concurring.

I concur in the result for reasons different than those contained in the majority opinion. In reading defendant's brief in chief, I have formed the distinct impression that he has thrown us a "red herring" by claiming that the injury threatened was not unlawful. In so contending, defendant strongly focuses the main thrust of his argument on appeal specifically on the express language of NMSA 1978, Section 30–16–9(A) (Repl.Pamp.1984), which specifies a "threat to do an unlawful injury." To do so is to view this language in isolation instead of considering it together with some rather significant and equally important language found in the first paragraph of the statute, namely, that the threat must be accompanied with the "intent * * * to wrongfully obtain anything of value." Defendant's bait has led the majority on what I consider to be an unnecessary journey through a discussion of breach of contract for the purpose of addressing defendant's misfocused argument and to determine if the injury threatened here was "unlawful." In my judgment, the emphasis should be on the wrongful intent, in this particular case, defendant's demand for payment of $3,500 from the victim. To me, *that* is the gist of the legislative proscription defining the elements of the crime of extortion. Under my interpretation, the legislature could have very well left out the word "unlawful" in subsection A and the language would continue to have the same meaning; I cannot see an injury to a person or property being anything but unlawful, at least, in context of the statutory language at issue here.

My conclusion that a wrongful demand is at the heart of the crime is reinforced by my belief that wrongfully threatening to do a lawful act clearly falls within the statutory definition of extortion. A prime example of this is a situation in which there is a threat to report a crime to the police unless the perpetrator "pays up." Reporting a crime (*truthfully*) is a lawful act, and is in fact encouraged by law enforcement agencies and crime prevention groups. But threatening to do so in order to wrongfully obtain money would, I believe, constitute extortion under the statute and would specifically fall under Section 39–16–9(B), just as would a threat to *falsely* accuse one of a crime. The point is that it is the wrongful demand that should determine the criminal nature of an action under the statute, not the lawfulness or unlawfulness of the act

threatened. *See People v. Dioguardi*, 8 N.Y.2d 260, 203 N.Y.S.2d 870, 168 N.E.2d 683 (1960) (defendant's threat to picket victim's place of business unless victim paid him constituted extortion even though picketing a legal act, when coupled with defendant's bad motive, turned into an unlawful act).

I interpret the subsections in Section 30–16–9 as merely examples of threats and not as exclusively defining the specific threats that may give rise to the crime of extortion. To me, it is irrelevant whether the harm threatened is unlawful, if the threat is made for an unlawful purpose, that is, wrongfully intending to obtain something of value from the victim. I conclude that defendant's conviction must be affirmed, but that an analysis of the unlawfulness of the act threatened is unnecessary.