1997-NMCA-063

942 P.2d 721

**STATE of New Mexico, ex rel., Joe SMITH and Richard M. Snell, Petitioners–Appellants,**

v.

**Larry RILEY and Phillip Riley, Respondents–Appellees..**

No. 17721.

Court of Appeals of New Mexico.

April 30, 1997.

Richard M. Snell, Clovis, for Petitioners–Appellants.

Joe Parker, Joe Parker, P.C., Clovis, for Respondents–Appellees.

*OPINION*

WECHSLER, Judge.

1. Petitioners appeal the dismissal of their petition for public nuisance under Rule 1–012(B)(6) NMRA 1997. We review whether Petitioners have stated a claim of public nuisance pursuant to NMSA 1978, Section 30–8–1(B) (Repl.Pamp.1994), and affirm.

*The Motion To Dismiss and Complaint*

2. In reviewing a motion to dismiss for failure to state a claim, we take the well-pleaded facts alleged in the petition as true and test the legal sufficiency of the claim. *Blea v. City of Espanola,* 117 N.M. 217, 218, 870 P.2d 755, 756 (Ct.App.1994); *Trujillo v. Berry,* 106 N.M. 86, 87, 738 P.2d 1331, 1332 (Ct.App.1987).

3. The petition alleges that Petitioners and other sportsmen regularly engage in trap shooting on Sunday afternoons at the Dan Kelly trap range located on a fifteen-acre tract of land near the municipal airport

in Clovis. They assert that the sport of trap shooting is legal when carried out in accordance with the "rules of safety" and the laws of New Mexico, and that the sport "affects many people in the community." Petitioners further state in the petition that Respondents own a five-acre tract adjacent to the Dan Kelly trap range; that Respondents, deciding that the trap range was detrimental to their property valuation, developed a scheme to stop the operation and use of the trap range; and that Respondents willfully and maliciously, with the intent to harass Petitioners and other sportsmen, made false allegations as to the legality of the trap range operation to the Curry County Sheriff's Department on at least three occasions during the past year. As a result of these allegations, according to the petition, the sheriff's department stopped the use of the trap range to conduct an investigation, to the detriment and damage of Petitioners, other sportsmen, and charitable institutions sponsoring a sporting event. Petitioners sought abatement of a public nuisance, compensatory and punitive damages, and an order that Respondents cease and desist in filing groundless complaints or engaging in other "surreptitious activities ... calculated to harass or interfere" with the operation of the trap range.

4. The district court granted Respondents' motion to dismiss for failure to state a claim. Petitioners' appeal raises the sole issue of whether the petition states a claim of public nuisance.

*Analysis*

5. Public nuisance has its roots in English common law. It came to mean "an act or omission 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects.'" W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 90, at 643 (5th ed.1984) (citation omitted). It was a crime. *Id.* at 645. Currently, New Mexico and all other states have criminal statutes barring public nuisance. *Id.* at 645–46. These statutes are commonly construed to encompass the common law prohibitions. *Id.* at 646. In New Mexico, the criminal prohibition is contained in Section 30–8–1 defining the petty misdemeanor of public nuisance, stating:

A public nuisance consists of knowingly creating, performing or maintaining anything affecting any number of citizens without lawful authority which is either:

A. injurious to public health, safety, morals or welfare; or

B. interferes with the exercise and enjoyment of public rights, including the right to use public property.

■ 6. Common law public nuisance covered a wide range of conduct which interfered with the interests of the community at large: "interests that were recognized as rights of the general public entitled to protection." Restatement (Second) of Torts § 821B cmt. b (1979). A public nuisance included "interference with the public health, ... with the public safety, ... with the public morals, ... with the public peace, ... with the public comfort, ... with the public convenience, ... and with a wide variety of other miscellaneous public rights of a similar kind." *Id.* This common law concept is carried into New Mexico law. *See* § 30–8–1; *State ex rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque*, 119 N.M. 150, 163, 889 P.2d 185, 198 (1994) (A "public right is one common to—belonging to—'all members of the general public.'" (quoting Restatement, *supra*, § 821B cmt. g)). A public nuisance affects "a considerable number of people or an entire community or neighborhood." *Padilla v. Lawrence*, 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App. 1984).

■ 7. We believe that Petitioner's claim distorts the definition of public nuisance. Petitioners claim a "public right" to shoot trap. They argue:

[Respondents'] argument that trap shooting is not a public right is completely without merit. It is without merit because the argument assumes that unless rights are given to people by the government, they do not exist. [Respondents] have this backwards, i.e. unless the people, through their duly elected government, see fit to restrict themselves in their rights, they

have the rights. It is the government which obtains its rights from the people, not vice versa. There being no law made in New Mexico against engaging in the sport of trap shooting, it goes without saying that trap shooting is a right owned by the people.

We disagree with Petitioners' argument and note that Petitioners do not claim injury to public health, safety, or morals; do not claim that Respondents have used property in an improper manner; and do not claim that Respondents have neglected to take some action required in the public good.

8. Although Petitioners assert that the trap range is imbued with a public right and used by sportsmen and charitable institutions, Petitioners merely use private property for recreational purposes. The claim that private property may be used for sporting endeavors falls short of a claim of protecting interests similar to public health, safety, or morals embraced by our statutory requirement derived from the common law. Petitioners do not even allege that the trap range is on public property or open to the public. This distinction is significant.

> Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public.... Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.

Restatement, *supra*, § 821B cmt. g, at 92. The district court properly concluded that Petitioners failed to state a claim of public nuisance under Section 30–8–1(B).

9. Independent of our conclusion that the sheriff's department investigations did not interfere with public rights, we disagree with Petitioners that Respondents'

contacts with the sheriff's department as alleged caused the interference and that the contacts were without lawful authority. As a consequence, the petition fails to fall within Section 30–8–1.

10. The conduct that Petitioners allege to be without lawful authority is the making of false allegations to the Curry County Sheriff's Department as to the legality of the trap range. According to the petition, when the sheriff's department received the complaints, it halted the use of the trap range to investigate.

11. Our law enforcement system encourages and relies on individuals complaining to law enforcement agencies rather than taking the law into their own hands. *See* Keeton et al., *supra*, § 119, at 871 ("The law supports the use of litigation as a social means for resolving disputes, and it encourages honest citizens to bring criminals to justice."); *State v. Chamberlain*, 112 N.M. 723, 729, 819 P.2d 673, 679 (1991) (noting limitations on using self-help measures in the context of illegal police action); *State v. Ashley*, 108 N.M. 343, 347, 772 P.2d 377, 381 (Ct.App.1989) (noting that policy of law in the context of certain real-property actions is to prevent people from taking the law into their own hands). *But see State v. Johnson*, 122 N.M. 696, 930 P.2d 1148 (1996) (citizen's arrest proper when citizen has good faith, reasonable belief that a felony is being or has been committed). Under this system, a citizen complaint only triggers law enforcement action which includes investigation and, if appropriate, further steps such as screening of complaints to determine the legality of the complained of conduct. Respondents' use of the complaint procedure, alleging that the operation of the trap range was illegal, is the type of complaint contemplated by this structure. The illegality of the trap range is an issue for law enforcement investigation.

12. Complainants are "given a large degree of freedom to make mistakes and misjudgments without being subjected to liability." Keeton et al., *supra*, § 119, at 871. Our legal system has balanced the "individual interest in freedom from unjustifiable litigation and the social interest in supporting resort to law" with the tort of malicious

prosecution. *Id.; see Zamora v. Creamland Dairies, Inc.,* 106 N.M. 628, 632–33, 747 P.2d 923, 927–28 (Ct.App.1987), and related torts for misuse of legal procedure. *See* Keeton et al., *supra,* §§ 119–121. Petitioners have not alleged any of these traditional tort claims concerning misuse of the legal system. Although Petitioners have alleged intentional acts on the part of Respondents, this allegation is insufficient. When we accept the allegations as true, Petitioners have not stated a claim under Section 30–8–1 because they have not alleged that Respondents did not have lawful authority to make their complaints to the sheriff's department.

13. For the foregoing reasons, we affirm the order of the district court dismissing the petition.

14. **IT IS SO ORDERED.**

APODACA and PICKARD, JJ., concur.