904 P.2d 1062

**SUNWEST BANK OF ALBUQUERQUE, N.A., a national association, Plaintiff/Counter-defendant-Appellant,**

v.

**Chris DASKALOS, Gus Daskalos, and Mary Daskalos, Defendants/Counterclaimants–Appellees.**

No. 15834.

Court of Appeals of New Mexico.

Aug. 21, 1995.

Certiorari Granted Sept. 28, 1995.

J. Douglas Foster, Jennifer A. Noya, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellant.

Martin E. Threet, Threet & King, Albuquerque, for Appellees.

## OPINION

BUSTAMANTE, Judge.

Sunwest Bank of Albuquerque (Sunwest) appeals from an award of punitive damages in favor of Gus and Mary Daskalos (the Daskalos), and their son, Chris Daskalos. In a non-jury trial, the trial court awarded punitive damages on the basis that Sunwest's policy of requiring victims of forgery to agree to assist in the criminal prosecution of the forger before it would reimburse the customer constituted extortion under NMSA 1978, Section 30–16–9 (Repl.Pamp.1994). On appeal, Sunwest argues its conduct did not

amount to extortion and that the punitive damage award was inappropriate in light of the trial court's failure to find Sunwest acted with any malicious or wrongful intent. For the reasons stated below, we reverse the award of punitive damages.

## BACKGROUND

The Daskalos were an elderly couple. Gus passed away while this matter was pending in the trial court. The Daskalos had a checking account with Sunwest from at least 1986 through 1989. Sometime during 1988, the Daskalos became aware of unspecified irregularities with the account. In December 1988, the Daskalos orally notified Sunwest of problems with the checking account and of their suspicion that Michelle Daskalos, their granddaughter, had forged their signatures on checks drawn on the account. When they first notified Sunwest, the Daskalos did not specify any particular checks which they believed were forged or unauthorized.

Sunwest's policy at the time was to require signature of a forgery affidavit as a condition to reimbursing its customers' accounts for forged checks. In addition, Sunwest required the customer to cooperate with criminal prosecution of the alleged forger. Sunwest's policy was in accord with the practice of other large banks in the Albuquerque area in 1988.

The Daskalos initially refused to sign a forgery affidavit and vigorously objected to a forgery prosecution against Michelle. In response to their refusal to sign the affidavit, Sunwest made no further efforts in December 1988, to reimburse the funds allegedly paid as a result of the forgeries. Sunwest did institute a two-signature requirement for the account as of December 1988, and forgeries apparently ceased thereafter.

Sunwest filed suit against the Daskalos in 1991 to collect on a promissory note and foreclose a mortgage. The Daskalos filed a counterclaim seeking reimbursement of some $58,000 allegedly paid by Sunwest on forged signatures. The trial court bifurcated the foreclosure action from the counterclaim, and the foreclosure action is not at issue here. After trial, the trial court determined that the Daskalos failed to exercise reasonable care in examining their bank statements and cancelled checks and failed to promptly notify Sunwest for all of the forged amounts claimed, except for $2,550.78. The trial court awarded judgment to the Daskalos in this amount, and Sunwest has not appealed from this award.

## DISCUSSION

The trial court found that Sunwest's policy of requiring execution of a forgery affidavit and prosecution of the alleged forger as a condition precedent to reimbursement of the customer's account "was at least a technical violation of Section 30–16–9 . . . requiring the assessment of punitive damages." We do not agree.

■ Sunwest raises several arguments challenging this finding. However, we need only reach the first—did Sunwest's conduct meet the statutory requirements for extortion? Section 30–16–9 states that "[e]xtortion consists of the communication . . . of any threat to another . . . with intent thereby to wrongfully obtain anything of value or to wrongfully compel the person threatened." The words of the statute require a wrongful intent. *Accord Rael v. Sullivan,* 918 F.2d 874, 876–77 (10th Cir.1990) (it is the manner in which the act is compelled, i.e., the threat, rather than the legitimacy of the objective that is determinative), *cert. denied,* 499 U.S. 928, 111 S.Ct. 1328, 113 L.Ed.2d 260 (1991); *see State v. Ashley,* 108 N.M. 343, 346, 772 P.2d 377, 380 (Ct.App.), *cert. denied,* 108 N.M. 433, 773 P.2d 1240 (1989); *see also State v. Strickland,* 21 N.M. 411, 412–13, 155 P. 719 (1916) (under former law, threat required to be malicious).

In this case, the trial court made no finding of any wrongful intent on the part of Sunwest. To the contrary, in its letter ruling, the trial court affirmatively stated it was awarding the Daskalos punitive damages "despite what may have been the good intentions of the bank's employees." Further, although the Daskalos attempt to argue to the contrary on appeal, at trial they conceded that Sunwest's employees were "good people" who "had no concept of what they were doing." Thus, as a threshold matter, absent a finding of any wrongful intention on the part of Sunwest, we hold that the award of punitive damages based on the extortion statute must fail.

■ The Daskalos argue that even if Sunwest's conduct does not constitute extortion, it is otherwise sufficient to support an award of punitive damages. *See State v. Beachum,* 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App.1972) (trial court decision will be upheld if it is right for any reason). The standard of review for an award of punitive damages is whether the award is supported by substantial evidence. *Clay v. Ferrellgas, Inc.,* 118 N.M. 266, 267, 881 P.2d 11, 12 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995). The court views the evidence in the light most favorable to the verdict and disregards all inferences to the contrary. *Id.* More particularly, when a party is challenging a conclusion of law, the standard of review is whether the law was correctly applied to the facts, viewing the facts in the manner most favorable to the prevailing party, and disregarding all evidence and inferences to the contrary. *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.,* 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991). However, "[a] judgment cannot be sustained on appeal unless the conclusion upon which it is based finds support in the findings of fact." *Bustos v. Gilroy,* 106 N.M. 808, 811, 751 P.2d 188, 191 (Ct.App.1988).

■ In order to support an award of punitive damages, there must be some evidence, and a corresponding finding, that the wrongdoer had a culpable mental state. *See Clay,* 118 N.M. at 269, 881 P.2d at 14. The wrongdoer's conduct must rise to a "willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Id.; accord* SCRA 1986, 13–1827 (Repl.1991). Characterization of the conduct depends to some degree on the risk of danger created by the activity. *Clay,* 118 N.M. at 269, 881 P.2d at 14. Here, as already noted, there were no findings of fact by the trial court of any wrongful or oppressive conduct or bad motive on the part of Sunwest. *See Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (failure of trial court to make a finding of fact is regarded as a finding against the party seeking to establish that fact). It would be inappropriate for this Court to affirm based on findings of fact the trial court did not make. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) (we will not affirm a district court on a new ground if such reliance would be unfair to appellant).

We are not called upon to, nor do we decide today, the legality or propriety of Sunwest's policy of requiring forgery victims to assist in the prosecution of the forger. In its brief, Sunwest urges that the Uniform Commercial Code (UCC) does not prohibit such a practice. This is true. However, the UCC does not authorize such a practice either. NMSA 1978, Section 55–4–406(c) (Repl.Pamp.1993), provides that a bank customer has an obligation to review his bank statements and to report unauthorized signatures to the bank promptly. In *Rutherford v. Darwin,* 95 N.M. 340, 344, 622 P.2d 245, 249 (Ct.App.1980), this Court held that the purpose of the statute was not to insulate the bank, but rather to mitigate the harsh rule that the bank is liable for paying drafts that contain unobvious forgery. This Court also declared that "all that is asked of the customer is that he examine the bank's documentation of transactions concerning his account." *Id.* Through its policy, Sunwest seems to have created for itself an additional barrier to recovery by the customer. Despite evidence presented in this case suggesting that other local banks have similar policies, our opinion should not be construed to imply that a bank customer's refusal to participate in the prosecution of the forger is a valid defense to a reimbursement claim under the UCC. We simply hold that, based on the facts as found by the trial court, the award of punitive damages cannot survive in this case. Whether another fact finder in another case could decide under different facts that a bank's conduct rises to a level of culpability sufficient to support a punitive damages award is an issue we leave for another time.

## CONCLUSION

Based on the facts as found by the trial court, the award of punitive damages may not stand and is hereby reversed.

**IT IS SO ORDERED.**

APODACA, C.J., and FLORES, J., concur.