2001-NMCA-085

33 P.3d 891

**Dar HOURIGAN, Plaintiff–Appellee/Cross–Appellant,**

v.

**Paul CASSIDY, R.J. Kirkpatrick and Lief Ahlm, Individually; and The New Mexico Department of Game and Fish, Defendants–Appellants/Cross–Appellees.**

**No. 20,895.**

Court of Appeals of New Mexico.

July 2, 2001.

Certiorari Denied, No. 27,054, Aug. 13, 2001.

Jeffrey J. Dempsey, John A. McCall, Albuquerque, NM, for Appellee/Cross–Appellant.

Mark D. Jarmie, Rosario Dyana Vega, Ned S. Fuller, Sharp & Jarmie, P.A., Albuquerque, NM, for Appellants/Cross–Appellees.

## OPINION

BUSTAMANTE, Judge.

{1} Defendants (Cassidy and Kirkpatrick) appeal a jury verdict in favor of Plaintiff on his claim for violation of his liberty interests. They contend that the trial court erred in denying their claim of qualified immunity. Further, they contend that the evidence was insufficient to support the jury verdict, that the trial court erred in admitting certain evidence regarding incidents that were outside the complaint, and that the trial court erred in submitting a special verdict form that did not include a statement regarding proximate cause. Plaintiff cross-appeals. Plaintiff contends that the trial court erred in refusing to allow him to amend his complaint to include a different claim and in refusing a jury instruction that would have assisted the jury in determining when an investigative stop escalates into an arrest. Having considered the parties' arguments, we affirm the trial court's rulings and the jury verdict.

## BACKGROUND AND FACTS

{2} Plaintiff is a resident of the Jemez area. Plaintiff is in the welding business and since leaving work at the Los Alamos Lab has run his own welding business in the Jemez area. Defendants are employees of the New Mexico Department of Game and Fish (Department) who were assigned at different times to the Jemez area for the purpose of enforcing the Game and Fish laws. Shortly after Cassidy began working in the Jemez area in 1988, Plaintiff reported to the Department that Cassidy was appropriating elk horns for personal profit while on duty, in uniform and using a Department vehicle. Plaintiff also reported that Cassidy had wrongfully taken an elk that Plaintiff had shot. Thereafter, Cassidy confronted Plaintiff in public places, falsely stating out loud that he had a crime-stoppers tip on Plaintiff and intimating that Plaintiff was a poacher. There was also testimony that whenever Cassidy saw Plaintiff's truck, he would leave a card on the windshield. Plaintiff testified that as a result of these public confrontations, he began to lose business. There was testimony that in 1989 Cassidy told William Dahl, then a Sandoval County Deputy Sheriff, that he was going to "get Dar Hourigan." Dahl testified he assumed that meant that Cassidy had probable cause to believe Plaintiff was violating the law. Finally, tensions between the two arose to such a level that a

meeting was held between Plaintiff and his attorney and members of the Department, including Cassidy. An agreement was reached that there would be no more public harassment.

{3} In 1993 Cassidy was transferred and Kirkpatrick began working in the Jemez area. Cassidy and Kirkpatrick had been college roommates and had been friends for many years. When Kirkpatrick was assigned to the area, he lived with Goob Barber, who later became the manager of the Baca Ranch. Kirkpatrick, Cassidy, and Barber were quite friendly and spent time together, hunting and gossiping. There was testimony that Barber did not trust Plaintiff. Plaintiff's welding business depended in large part on work for the timber companies working on the Baca Ranch. In 1996 Plaintiff was denied access to the Ranch. He contended that the denial was caused by the friendship among Defendants and Barber. As a result of the denial of access, Plaintiff lost any business that he had with the companies on the Ranch.

{4} In 1994 there was a significant fish kill on the San Antonio River, which runs through Plaintiff's property. Plaintiff reported the kill to Kirkpatrick. Kirkpatrick told Plaintiff to collect the fish and freeze them so that an autopsy could later be conducted. Kirkpatrick did not investigate until several days later. Plaintiff complained that Kirkpatrick was not doing his job because the person who caused the pollution upstream was on good terms with Game and Fish officers. Plaintiff testified that Kirkpatrick became angry and threatened to cite Plaintiff for possessing too many game fish. Plaintiff and his wife then wrote to Senator Bingaman and Representative Richardson about the problems they were having. The Department received letters from both inquiring about what investigation was being conducted.

{5} In 1995 Plaintiff was detained by Cassidy and Kirkpatrick who were investigating an illegal elk kill on the Baca Ranch. Kirkpatrick was told by an employee of the Ranch that the individual responsible for the kill was wearing camouflage, a blue baseball cap, and Danner boots. Kirkpatrick went to Thompson Ridge to investigate. Kirkpatrick called Cassidy to assist him in blocking one of the two exits from the area. Plaintiff, who had left a friend hunting on Thompson Ridge, was seen leaving the area in his truck. Kirkpatrick and Cassidy agreed that Plaintiff should be stopped in order to see what he was wearing. Cassidy stopped Plaintiff at the gate to his property. Cassidy reported to Kirkpatrick that Plaintiff was not wearing camouflage, but had on a blue baseball cap. Kirkpatrick advised Cassidy to hold Plaintiff until he arrived; that he was en route with a witness. There was conflicting testimony regarding whether Plaintiff was told he was under arrest. There was also conflicting testimony regarding whether Cassidy was told that Plaintiff did not meet the description given by the witness. When Kirkpatrick arrived, he looked in Plaintiff's truck for any camouflage, he asked Plaintiff a couple of questions, then he and Cassidy left the scene.

{6} There was conflicting testimony regarding the amount of time that Plaintiff was detained, with Plaintiff testifying that it lasted forty-five minutes, and Cassidy testifying that it lasted about twenty minutes. There was also conflicting testimony regarding whether the detention was acrimonious. During that time, friends who were fishing on Plaintiff's property visited cordially with Cassidy. Cassidy testified that he did not say much to Plaintiff, but prevented him from entering his property until Kirkpatrick arrived. He also testified that Plaintiff was yelling at him, although there was no physical confrontation. Plaintiff's wife attempted to video-tape the encounter, but apparently did not know how to operate the camera and got nothing but people standing around.

{7} In the winter of 1995 Plaintiff was stopped a number of times by Kirkpatrick and other Department officers and asked about hunting licenses. In fact, it was so bad that several of Plaintiff's friends would no longer hunt with him because he was either stopped or followed by Department officers. The following year, on the first day of hunting season, Plaintiff went to his traditional spot and found Game and Fish vehicles throughout the area. Everywhere he went, he was followed by Department officers.

{8} After he was denied access to the Baca Ranch and lost much of his welding business in 1996, Plaintiff filed this lawsuit alleging false arrest for the stop in 1994 and violation of his civil rights by a pattern of harassment intended to ruin Plaintiff's business and reputation. The next day Kirkpatrick sped past Plaintiff's house at a high rate of speed, then came back and asked Plaintiff's wife about a road she had never heard of. Later that summer, Kirkpatrick stopped one of the persons identified as a witness by Plaintiff and began asking him about his testimony in the lawsuit. At the end of that summer, Plaintiff attended a "fire sale" for hunting permits with several of his friends. Both Cassidy and Kirkpatrick were there and threatened Plaintiff with expulsion from the property if he did not stay in the line, treatment that was meted out only to him. Others were allowed to have someone else hold their space in line and rest in chairs set up for that purpose. Ultimately, when Plaintiff's turn came to obtain a permit, his request was denied. However, after his permit was denied, someone later in the line was given a permit for the area that Plaintiff had sought.

{9} Several weeks before trial, Plaintiff moved to amend his complaint to include a claim for retaliation. The trial court denied the motion. At the same time, the trial court denied Defendants' motion for summary judgment on Plaintiff's constitutional claims. Shortly before trial, Defendants also moved in limine to exclude evidence regarding incidents that were either outside the statute of limitations or happened after the complaint was filed. The trial court denied that motion.

{10} At the close of Plaintiff's case, the trial court granted a directed verdict motion on Plaintiff's defamation claims against Defendants. It also denied a directed verdict motion on constitutional claims based on an unreasonable stop and a liberty interest violation. At the conclusion of the trial, Defendants renewed their directed verdict motion on the constitutional claims. The trial court again denied the motion. Defendants objected to Plaintiff's verdict form because it included punitive damages and failed to provide a causation line.

{11} The jury returned a verdict in favor of Defendants on all counts except the liberty interest claim. The jury awarded compensatory damages in the amount of $6,250 against each of the two defendants and punitive damages against each of the same amount. Defendants filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. Plaintiff filed a similar motion. Both motions were denied. Thereafter, both parties appealed.

## APPEAL

### Qualified Immunity

{12} The applicability of qualified immunity is a question of law that this Court reviews de novo. *See Silva v. Town of Springer*, 121 N.M. 428, 434, 912 P.2d 304, 310 (Ct.App.1996). "Government officials performing discretionary functions are entitled to qualified immunity from suit under § 1983 as long as 'their conduct [did] not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.' " *Cockrell v. Bd. of Regents*, 1999–NMCA–073, ¶ 8, 127 N.M. 478, 983 P.2d 427 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Once qualified immunity is raised, the court must employ a two-part test. First, the court must determine whether there are sufficient facts to support a finding of a violation of rights. Second, if there has been a violation, the court must determine whether the right was clearly established at the time of the alleged violation. *Cockrell*, 1999–NMCA–073, ¶ 9, 127 N.M. 478, 983 P.2d 427.

{13} Here, Defendants argue that Plaintiff failed to articulate the clearly established right and the conduct that violated that right. Defendants argue that for a right "to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992). The case, however, does not have to be a factually identical case. *See Clanton v. Cooper*, 129 F.3d 1147, 1156–57 (10th Cir.1997). "[T]here may be circumstances in which the law is

clearly established despite the absence of a case in point." *Dunn v. McFeeley*, 1999–NMCA–084, ¶ 18, 127 N.M. 513, 984 P.2d 760. We believe that this is one of those situations where the right is clearly established even though there is no case directly on point.

■ {14} Defendants argue that Plaintiff's claimed constitutional violation consists solely of acts by Defendants to humiliate, intimidate, harass, or impugn Plaintiff's good name. This, they argue, does not state a constitutional violation. We agree that generally there is no constitutional claim for defamation or loss of reputation. *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In order to state a liberty interest claim under § 1983, the loss of reputation must be combined with damage to other legal interests. *Id.* Thus, in addition to stigma caused by state actors, there must be some evidence that the state sought to remove or significantly alter life, liberty, or property interests recognized and protected by state law. *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir.1995). The other legal interests have often been identified in terms of employment or business relationships. *See Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987); *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 982 (10th Cir.1991). The federal cases make it clear that there is a liberty interest in operating a legitimate business. *Thompson*, 70 F.3d at 392. Thus, it is clearly established in federal case law that a liberty interest claim may be raised based on loss of reputation in combination with harm to an established business relationship. *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 828–29 (11th Cir.1982) (finding where harassment and multiple citations by building code and fire inspectors caused loss of rentals and business, a prima facie liberty interest claim has been stated); *Corbitt v. Andersen*, 778 F.2d 1471, 1475 (10th Cir.1985) (finding that discrediting psychologist's professional standing resulting in present harm to his established business relationships states a liberty interest claim).

{15} Further, this liberty interest claim was clearly established at the time of the actions, which were the basis of this lawsuit.

Both *Paul* and *Corbitt* were decided before the pattern of harassment that began in 1988 and culminated in 1996 with Plaintiff losing his business both in the community and on the Baca Ranch. Although Defendants argue that Plaintiff's claim was simply one based on a loss of reputation, the evidence established that Plaintiff claimed that the stigma caused by Defendants resulted in a significant loss to his business; that he, in fact, lost two established business clients due to the Defendants' false statements.

■ {16} Defendants also claim that their conduct did not violate the law. They argue that the incidents were spread out over a number of years and were few and inconsequential. On the contrary, Plaintiff presented evidence showing a pattern of incidents falsely alleging that he was a poacher, dogging his footsteps whenever he was legally hunting, and threatening him with citation for violation of hunting and fishing laws. All of these actions led to Plaintiff losing business in the area and, ultimately, the denial of any access for Plaintiff to the Baca Ranch. We hold that Plaintiff's allegations were sufficient to overcome Defendants' claim of qualified immunity.

### Sufficiency of the Evidence

■ {17} When considering a claim of insufficiency of the evidence, we resolve all disputes of facts in favor of the successful party and indulge all reasonable inferences in support of the prevailing party. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177. We do not reweigh the evidence nor substitute our judgment for that of the fact finder. We simply review the record for "such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). "Evidence is substantial even if it barely tips the scales in favor of the party bearing the burden of proof." *Id.* Furthermore, our review is not to determine whether substantial evidence exists to support the opposite result, but whether such evidence supports the result reached. *Las Cruces Prof'l Fire Fighters*, 1997–NMCA–044, ¶ 12, 123 N.M. 329,

940 P.2d 177. Here, Defendants claim that there is not substantial evidence to support the jury's determination of a violation of Plaintiff's liberty interest. Nor, they claim, is there substantial evidence to support the award of punitive damages.

{18} The liberty interest claim was based on a pattern of harassment by both Defendants that caused Plaintiff to lose the association of his friends and caused him to lose business in the area where he lived. Initially, we note that Defendants' brief does not present us with a recitation of the evidence that would support the verdict. Rather, Defendants focus on the evidence that would support the opposite result. Such briefing is not acceptable. *See Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 185–86, 848 P.2d 1108, 1112–13 (Ct.App.1993). Appellate courts should be given the fact-finder's view of the facts; that is, the evidence that supports the jury's verdict in favor of Plaintiff. Even though Defendants' brief does not fully comply with the rule, we nevertheless consider the claim of insufficiency of the evidence as our review of all the briefs provides us with the facts that support the jury's verdict.

{19} We believe, viewing the record in the light most favorable to the verdict, that the evidence was sufficient for the jury to find that Defendants violated Plaintiff's liberty interest. There was evidence presented showing that over a period of nearly ten years, Plaintiff was followed by Defendants whenever he was out on public lands. He was subjected to threats of citation for violation of hunting and fishing laws, even though he was never cited, and circulation of unsubstantiated rumors that he was a poacher. We recognize that Defendants were authorized by law to check hunting and fishing licenses and were authorized to give citations for violations of hunting and fishing laws. However, the evidence showed that Defendants appeared to specifically target Plaintiff and his family and friends. They appeared to pointedly follow Plaintiff and watch what he was doing. Their activities reached a point where Plaintiff's friends would not go hunting with him because he was followed by Department officers wherever he went and his license was checked every day. Further, evidence was presented that during this time period, Plaintiff lost so much of his welding business that he had to start a new business. The loss of the welding business was in large part due to the fact that he was no longer given access to the Baca Ranch where much of his welding was done. There was evidence from which the jury could have inferred that access was denied because of the good relations between Defendants and the manager of the Ranch. We find that there was substantial evidence to establish a pattern of harassment of Plaintiff that caused him to lose business and friends.

{20} "[T]o support an award of punitive damages, there must be some evidence, and a corresponding finding, that the wrongdoer had a culpable mental state." *Sunwest Bank v. Daskalos*, 120 N.M. 637, 639, 904 P.2d 1062, 1064 (Ct.App.1995). "The wrongdoer's conduct must rise to a 'willful, wanton, malicious, reckless, oppressive, or fraudulent level.' " *Id.* (quoting *Clay v. Ferrellgas*, 118 N.M. 266, 269, 881 P.2d 11, 14 (1994)). Here, evidence was presented that Defendants' harassment of Plaintiff was done in public, without any evidence of wrongdoing on his part. Further, the evidence established that at times, Plaintiff was actually targeted for investigation by Defendants. The jury could have inferred that Defendants pursued Plaintiff with the intent to harm him. There was sufficient evidence present for the jury to award punitive damages in this case.

### Admission of Evidence

{21} We review the trial court's determination regarding the admission or exclusion of evidence for an abuse of discretion. *Cumming v. Nielson's, Inc.*, 108 N.M. 198, 203, 769 P.2d 732, 737 (Ct.App.1988). "In addition, the complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." *Id.* at 203–04, 769 P.2d at 737–38. Here, Defendants complain about four areas of evidence: (1) Plaintiff's complaint regarding a friend of Cassidy's illegally hunting bear; (2) Plaintiff's complaint about Cassidy collecting elk horns for his personal benefit while on duty; (3) the alle-

gation that Cassidy called Plaintiff a poacher in public and indicated that he had a crime-stopper's tip on Plaintiff; and (4) the allegation that Plaintiff was improperly prevented from getting a hunting license in 1997.

{22} Defendants attack the first three areas of evidence on the basis that they were unrelated to the detentions alleged in the complaint and were beyond the statute of limitations. Defendants contend that the evidence was not relevant and was only presented to allege character in conformity with these incidents. Rule 11–404(B) NMRA 2001 states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

{23} We disagree with Defendants' assertion that the evidence was not relevant. The evidence was relevant to Plaintiff's liberty interest claim as it tended to show motive, intent, and a pattern of harassment. Plaintiff was not relying on a single act that violated his liberty interest right, but on a pattern of acts that culminated in a loss of business and personal relationships. Acts that are part of a continuing pattern of harassment, even though some of them occurred outside the statute of limitations, are admissible as evidence of the continuing pattern. *Cf. Robinson v. Maruffi*, 895 F.2d 649, 654–55 (10th Cir.1990) (holding that particular wrongful acts occurring outside the statute of limitations period could be considered part of a claim for malicious prosecution conspiracy occurring within the limitations period.)

{24} Defendants argue that the fourth incident, which occurred after the complaint was filed, is clearly irrelevant. However, evidence of a continuing pattern of harassment is allowed. Plaintiff presented other evidence as well to show that the harassment did not stop with the filing of the complaint, but rather continued. Thus, this piece of evidence was relevant to intent as well.

{25} Moreover, Defendants have failed to show how they were prejudiced by the ad-mission of this evidence. *See State v. Gammill*, 102 N.M. 652, 655, 699 P.2d 125, 128 (Ct.App.1985) (concluding that without a demonstration of prejudice, there is no abuse of discretion). We believe that the trial court did not abuse its discretion in allowing evidence that was used to show a pattern of harassment, which was the basis for the liberty interest claim.

### Special Verdict Form

{26} Defendants argue that the trial court erred in giving the jury a special verdict form that did not contain a causation element. Defendants argue that the Uniform Jury Instructions require the issue of causation to be in the verdict form. Our review of the Uniform Jury Instructions, however, shows that the issue of causation is included only in the comparative negligence form. *See* UJI 13–2220 NMRA 2001. We believe that is appropriate because the focus in a comparative negligence case is upon causation. We do not believe the Uniform Jury Instructions require the issue of causation to be included in the verdict form for this case.

{27} We review all the jury instructions to determine whether, taken as a whole, they fairly present the issues and applicable law. *See Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 26, 766 P.2d 280, 286 (1988). While we recognize that the special verdict form given to the jury does not include a causation element, the jury instructions as a whole do properly instruct the jury on the issue of causation. Instruction No. 3 requires the jury to find that the acts of Defendants were the proximate cause of the damages sustained by Plaintiff. Instruction No. 5 defines proximate cause. Thus, the instructions taken as a whole address the question of causation and we find no error in the special verdict form.

## CROSS–APPEAL

### Amendment of the Complaint

{28} Plaintiff contends that the trial court erred in refusing to allow him to amend his complaint. We review the denial of a motion to amend the complaint for an abuse of discretion. *Fernandez–Wells v. Beauvais*, 1999–NMCA–071, ¶ 15, 127 N.M. 487, 983 P.2d 1006. While amendments should

generally be allowed, we will not reverse the trial court's decision unless there is no reason to support the decision. *Id.* Here, two weeks before trial, Plaintiff sought to amend his complaint to allege a claim of retaliation for exercising his First Amendment rights. Defendants objected on the basis that the amendment was filed late and that they would be deprived of the opportunity to conduct discovery and to assert their qualified immunity defense related to the new claims.

{29} We recognize that amendments should be freely allowed and should be denied only where the motion is unduly delayed or where amendment would unduly prejudice the non-movant. Here, the trial court determined that Defendants would be unduly prejudiced by the amendment. The trial court noted that the new allegations might change trial strategy and that with only one week until trial, that would be unreasonable. We cannot say that the trial court's decision is clearly untenable. *Dominguez v. Dairyland Ins. Co.*, 1997–NMCA–065, ¶ 18, 123 N.M. 448, 942 P.2d 191. ("An abuse of discretion occurs when the court exceeds the bounds of reason, considering all the circumstances before it.") (citations omitted). Rather, we agree that the new allegations had the potential to change how the case would be tried.

{30} Plaintiff urges us to consider whether the evidence that would have been presented on the retaliation issue would have prejudiced Defendants, pointing out that the evidence had already been discovered and was admitted in the case anyway. While we agree that it appears that much of the evidence on the issue of retaliation was already known and, in fact, was admitted at trial, we nevertheless believe that the claim raised different issues than those presented in the liberty interest violation. Defendants would have been required to defend the matter differently in particular with regard to the qualified immunity defense. Given the potential for the amendment to affect trial strategies so close to the trial date, we cannot say it was an abuse of discretion for the trial court to deny the motion to amend the complaint.

### Jury Instruction

{31} Plaintiff argues that the trial court erred in refusing to give his requested Instruction No. 8. He argues that the instruction would have given the jury guidance in how to determine when an investigative stop escalates into an arrest. A party is entitled to a jury instruction on his theory of the case if the evidence supports it. *Adams v. United Steelworkers of Am.*, 97 N.M. 369, 374, 640 P.2d 475, 480 (1982). The instruction, however, must be a correct statement of the law. Plaintiff's requested instruction reads:

> Under the Fourth Amendment of the United States Constitution, an investigative detention is a seizure of limited scope and duration and must be supported by a reasonable suspicion of criminal activity.

> An investigative detention may escalate into a[n] arrest, which is also a seizure under the Fourth Amendment of the United States Constitution an[d] must be supported by probable cause to believe that the person arrested has committed or is committing a crime.

> Each stage of a seizure must be analyzed to determine if the requisite level of suspicion or cause is present at each stage.

{32} Plaintiff argues that the jury needed this instruction in order to assist it in determining when a detention escalates into an arrest. We fail to see how this instruction gives that assistance. The instruction simply states the law regarding the suspicion needed for each kind of stop. The jury had already been given that law in other instructions. Since the jury had already been instructed on the level of suspicion needed for each type of stop, this instruction was simply duplicative. The trial court is not required to give an instruction that has already been covered by other instructions. *See Tipton v. Texaco, Inc.*, 103 N.M. 689, 698, 712 P.2d 1351, 1360 (1985) (finding no error in refusing a duplicative and possibly confusing instruction).

{33} While Plaintiff's brief correctly states the law with regard to when a detention may ripen into an arrest, *see State v. Werner*, 117 N.M. 315, 317–19, 871 P.2d 971, 973–75 (1994), we do not believe that the jury instruction that he requested did so. The refused instruction does not explain when a

detention becomes an arrest, but only what level of suspicion is required to support each stop. The instruction simply stated that at each stage of a seizure, the requisite level of suspicion was required. It does not give the kind of guidance that Plaintiff now contends that he sought to give the jury. We cannot say that the trial court erred in refusing an instruction that was not only duplicative but did not give the guidance that Plaintiff asserts the jury needed.

**CONCLUSION**

{34} We hold that a liberty interest claim based on a pattern of harassment and intimidation by Department officers that resulted in a loss to Plaintiff's business relationships stated a § 1983 claim of conduct that violated a clearly established right of which a reasonable person would have known. We affirm the trial court's ruling upon the motion to amend the complaint, the evidence, and the jury instructions. We likewise affirm the jury's verdict as supported by substantial evidence.

{35} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge and M. CHRISTINA ARMIJO, Judge.