This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36848

STATE OF NEW MEXICO ex rel.
STATE ENGINEER FOR THE STATE
OF NEW MEXICO,

     Petitioner-Appellee,

v.

STEVEN E. FAYKUS and THE FAYKUS
FAMILY REVOCABLE TRUST,

     Respondents-Appellants.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James J. Wechsler, Presiding Judge**

Gregory C. Ridgley, General Counsel
Arianne Singer, Deputy General Counsel
Richard A. Allen, Special Assistant Attorney General
Santa Fe, NM

for Appellee

Robert S. Simon
Albuquerque, NM

for Appellants

## MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Respondents Steven E. Faykus and the Faykus Family Revocable Trust appeal from a district court order issued in a stream system adjudication, pursuant to NMSA 1978, §§ 72-4-15 to -19 (1907, as amended through 1965). Respondents contend (1) substantial evidence did not support the special master's finding that Faykus had not

demonstrated appropriation for beneficial use prior to 1907; (2) substantial evidence did not support the special master's finding that, even if there had been such appropriation, it was abandoned or forfeited prior to 1938; (3) the special master erred in refusing to recognize flood irrigation of pasturelands as a beneficial use of water; and (4) the district court abused its discretion by denying Faykus's motion for reconsideration.[1] We affirm.

**BACKGROUND**

**{2}**     This appeal arises from a single stream adjudication initiated by the State of New Mexico ex rel. State Engineer for the State of New Mexico (the State) concerning appropriation of water from the Rio Grande River (the River), south of the Elephant Butte Dam and north of Caballo Reservoir. On April 21, 2011, the State sent an offer of judgment to Respondents, recognizing a groundwater right for irrigation of 14.14 acres and a domestic water right, but declining to recognize a right to divert surface water from the River using a river pump. Respondents timely objected to the offer, and the matter was referred to mediation. No settlement having been reached, on June 24, 2013, the district court referred the subfile proceeding to a special master, pursuant to Rule 1-053(B) NMRA (authorizing appointment of a special master in a non-jury trial "upon a showing that some exceptional condition requires it").

**{3}**     Because Faykus had not obtained a permit authorizing surface water appropriation, the issue before the special master was whether Respondents' predecessors in title had diverted surface water for beneficial use sufficient to establish a priority right prior to 1907. *See* N.M. Const. art. XVI, § 1 ("All existing rights to the use of any waters in this state for any useful or beneficial purpose are hereby recognized and confirmed."); NMSA 1978, § 72-1-2 (1907) (stating that "[b]eneficial use shall be the basis, the measure and the limit of the right to the use of water" and requiring all claims of pre-1907 priority to be demonstrated by evidence of beneficial use); *see also Walker v. United States*, 2007-NMSC-038, ¶¶ 22-24, 142 N.M. 45, 162 P.3d 882 (stating that New Mexico follows the doctrine of prior appropriation, which holds that "water rights are both established and exercised by beneficial use"). Following a three-day trial, the special master determined that Respondents had not met their burden of establishing their claimed water rights by a preponderance of the evidence because they were unable to demonstrate pre-1907 diversion of the River's surface waters for beneficial use on the specific tracts of land that currently make up the subfile property. The special master further found that, to the extent Respondents had established a pre-1907 surface water right, such right had been forfeited or abandoned by nonuse occurring between 1903 and 1938. Respondents objected to the special master's recommendation on April 22, 2016. The district court heard arguments on Respondents' objections on August 31, 2016, but deferred entering judgment for forty-five days to

---

1In addition to the matters on appeal, the underlying action concerned subfile Nos. 28-004-1114 (concerning claimant Steve E. Faykus), 28-004-1117 (concerning claimants Steven E. Faykus and the Faykus Family Revocable Trust), and 28-004-007 (concerning claimant Rio Vista Land Co. LLC). Prior to trial, Claimant Steven E. Faykus accepted the State's offer of judgment in subfile No. 28-004-1114 and the special master granted the parties' joint motion for severance of subfile No. 28-004-1117. Rio Vista Land Co. LLC did not object to the special master's report concerning subfile No. 28-004-007 and is not a party to this appeal.

allow Respondents an opportunity to file any relevant motions. Following an additional continuance, Respondents filed their motion for reconsideration of the special master's report on December 30, 2016, arguing that newly discovered evidence would demonstrate that Respondents had established pre-1907 surface water rights, the rights had not been abandoned or forfeited, the special master had misinterpreted certain exhibits, and the special master had improperly required Respondents to produce site-specific evidence of beneficial water use.

**{4}** Following a hearing on the motion, the district court denied Respondents' motion for reconsideration, adopted the findings of the special master, and entered judgment in conformity with the special master's determination that Respondents were entitled to groundwater irrigation and domestic water rights but not to surface water rights appurtenant to the subfile property. Respondents appealed.

## DISCUSSION

**{5}** Respondents' first two points of error concern whether substantial evidence supports the special master's findings of fact. As a threshold matter we consider whether, as the State contends, Respondents waived any such arguments because they failed to point to evidence in the record supportive of the special master's findings, in contravention of Rule 12-318(A)(3) NMRA. *See id.* (stating that "[a] contention [on appeal] that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition"). Respondents' brief in chief includes twenty-seven specific factual assertions, none of which include the facts relied upon by the special master in making his determination that Respondents had not established a pre-1907 surface water right. Instead, Respondents recite only those factual assertions that were either peripheral to, or in contravention of, the evidentiary basis of the special master's determination that no surface water right should be adjudicated in this matter. Respondents' reply brief does nothing to rectify this omission. We agree with the State that Respondents failed to comply with Rule 12-318(A)(3). *See Hourigan v. Cassidy*, 2001-NMCA-085, ¶ 18, 131 N.M. 141, 33 P.3d 891 (stating that, in a brief attacking the sufficiency of the evidence, the defendant's failure to recite evidence in support of the verdict is "not acceptable" as "[a]ppellate courts should be given the fact-finder's view of the facts").

**{6}** However, even if we were to exercise our discretion under the rules and consider Respondents' arguments concerning the sufficiency of the evidence, we conclude the district court did not err in adopting the special master's findings that Respondents had not established a pre-1907 water right and that, to the extent any such right was established, it was abandoned. We explain.

## I. Substantial Evidence Supported the Special Master's Determination That Respondents Failed to Establish a Pre-1907 Surface Water Right

**{7}**     Respondents contend the district court erred by accepting the special master's finding that the evidence proffered by Respondents was insufficient to establish a pre-1907 priority right based on appropriation of surface water from the River for beneficial use. More specifically, Respondents contend that the special master's findings should not have been adopted by the district court because (a) the special master failed to accept Respondents' declarations, patents, and affidavits as prima facie evidence of beneficial use; (b) the special master should have judicially estopped the State from objecting to Respondents' water rights; and (c) the special master erred in finding that the State had rebutted Respondents' prima facie evidence. The State argues that substantial evidence supports the special master's finding that Respondents' predecessors in title did not apply water to beneficial use prior to 1907 and judicial estoppel is not warranted in this case.

**{8}**     Where, as here, a district court refers a matter to a special master, the district court must accept the special master's findings of fact unless they are "clearly erroneous."[2] *See* Rule 1-053(E)(2). This standard precludes a district court from reweighing the evidence. *See State ex rel. Office of State Eng'r v. United States*, 2013-NMCA-023, ¶¶ 11-13, 16, 296 P.3d 1217 (reviewing the substantial evidence doctrine and concluding that "the district court [can] reject the special master's findings of fact only if they [are] not supported by substantial evidence"); *State ex rel. Martinez v. Lewis*, 1994-NMCA-100, ¶ 4, 118 N.M. 446, 882 P.2d 37 (stating that, in reviewing a substantial evidence claim, the court "may not reweigh the evidence or retry a disputed issue to reach a different result if there is evidence supporting the decision of the trial court"). "The [special] master's findings are presumed to be correct and so far as they depend upon conflicting evidence, or upon the credibility of witnesses, or so far as there is any testimony consistent with the findings, they must be treated as unassailable." *State ex rel. Office of State Eng'r*, 2013-NMCA-023, ¶ 27 (omission, alteration, internal quotation marks, and citation omitted). The district court reviews a special master's conclusions of law de novo. *Id.* ¶ 17. On appeal, we review the decision of the district court using the same standards: we determine whether the special master's findings of fact are supported by substantial evidence and review legal determinations de novo. *Id.* ¶¶ 17-18. "Substantial evidence is relevant legal evidence which a reasonable person would accept as adequate to support a conclusion and it is that which establishes facts from which reasonable inferences may be drawn." *Durrett v. Petritsis*, 1970-NMSC-119, ¶ 10, 82 N.M. 1, 474 P.2d 487.

## A.     Respondents' Prima Facie Evidence

**{9}**     At trial, Respondents offered two land office patents—the Arons and Baldez patents—and a declaration of surface water rights filed in 1974 with the Office of the State Engineer as evidence that Respondents' predecessors in title irrigated the subfile property and perfected a pre-1907 surface water right. The special master found that Respondents property lies partially within the acreage claimed by the Arons patent and partially within the acreage claimed by the Baldez patent. He found that the Arons

---

2Respondents appear to incorrectly assert that the district court's adoption of the special master's findings should be subject to an abuse of discretion standard of review.

patent covered approximately fifty-two acres, of which three acres were cultivated and farmed, and the Baldez patent covered approximately 147 acres, of which five or six acres were farmed. However, the special master found that none of the evidence at trial specified the location of the acreage farmed by Arons or Baldez, and it was therefore impossible to determine whether the land they cultivated and irrigated fell within the subfile properties.

**{10}** Next, the special master considered the declaration of Respondents' predecessor in title, Robley Hedrick, which was filed in 1974 pursuant to NMSA 1978, Section 72-1-3 (1961). Contrary to Respondents' claim, the special master specifically found that the declaration constituted prima facie evidence that a pre-1907 surface water right to irrigate thirty acres had been perfected on the subfile property. However, he determined that the State effectively rebutted this evidence with a survey of irrigation published in 1896 (the Follett Report). The Follett Report contained no discussion of irrigation practices in the area of the subfile property and described two ditches in the township and range within which the property was then located as "washed out and abandoned in 1884."[3]

**{11}** The prima facie evidence having been rebutted, the special master then determined that Respondents had failed to prove each element of their water rights by a preponderance of the evidence. He found the land patent records, in light of the Follett Report, failed to establish that the irrigation and farming undertaken by Arons and Baldez was sufficiently sustained to establish a water right. The special master also determined that "[a]lthough the affidavits [offered in support of the Hedrick declaration] suggest that irrigated farming was taking place around the Hot Springs area[4] in the early twentieth century, only an attenuated reading would indicate that farming was taking place in the vicinity of the [s]ubfile [p]roperties prior to 1907." Moreover, the special master found that Respondents had failed to demonstrate that the acreage farmed by Arons and Baldez corresponded to the area where the subfile properties are currently located, nor had they proven the amount of irrigated acreage currently claimed, given that Arons and Baldez had only claimed to farm twelve to thirteen acres and Respondents claim a right to irrigate twenty-five acres.

**{12}** Respondents do not dispute most of these facts. Importantly, Respondents do not contest the factual basis for the special master's determination that the land records and affidavits failed to identify the specific acreage and location of irrigation and farming prior to 1907. Instead, Respondents argue the State should have been judicially estopped from denying the existence of Respondents' water rights, and the special master erred by concluding the Follett Report rebutted Respondents' prima facie evidence of beneficial use.

---

3In his conclusions of law, the special master cites factual finding No. 26 as evidence rebutting the prima facie evidence of a pre-1907 surface water right created by the Hedrick declaration. This appears to have been in error, as factual finding No. 26 concerns evidence of post-1907 water use—specifically a 1916 survey, stating that "cultivation has been abandoned for a number of years."

4Hot Springs is the town currently known as Truth or Consequences, New Mexico.

## B.      Estoppel

**{13}**    Respondents assert on appeal that the district court erred by failing to judicially estop the State from contesting Respondents' water rights. The doctrine of judicial estoppel prohibits a party from maintaining inconsistent positions in a judicial proceeding, whereas equitable estoppel precludes a litigant from asserting a claim against an opposing party if the litigant, by words or conduct, misrepresented a material fact and the opposing party relied upon that misrepresentation to its detriment. *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶¶ 23-24, 132 N.M. 207, 46 P.3d 668. Neither doctrine applies here.

**{14}**    The essence of Respondents' estoppel claim is that the State "accepted the Hedrick declaration in 1974" by failing to timely contest it, but now improperly denies the water rights declared therein. However, the special master found the State's failure to contest the Hedrick declaration in 1974 did not amount to it taking a position on Hedrick's claimed rights, and we agree. The declaration contained express language stating that the government's "[a]cceptance [of the declaration] for filing does not constitute approval or rejection of the claim." Moreover, Respondents failed to demonstrate that the State made any misrepresentation related to the declaration or the rights at issue, or that they or their predecessors in title relied upon any words of, or conduct by, the State suggesting the validity of the claimed rights. Finally, any contention that the State should be estopped from denying Respondents' water rights because it delayed in contesting the Hedrick declaration is contrary to New Mexico law. *See State ex rel. Erickson v. McLean*, 1957-NMSC-012, ¶ 32, 62 N.M. 264, 308 P.2d 983 (stating that "[t]he general rule is[] that neglect or omission of public officers to do their duty cannot work an estoppel against the state"). Thus, we hold the State was not estopped from asserting its claims below.

## C.      The State's Rebuttal Evidence

**{15}**    Curiously, Respondents simultaneously contend the Follett Report could not rebut the prima facie evidence of beneficial use prior to 1907 because it "contains *no* evidence or facts related to the [s]ubject [l]and" and that it "supported use of water in the area of the [s]ubject [l]and, when it stated there were ditches in District 16, wherein the [s]ubject [l]and is located." Putting aside this logical inconsistency, at best Respondents' argument amounts to an assertion that the special master improperly weighed the Follett Report because he focused on the fact that the ditches in or near the subfile property appeared to be washed out and abandoned, rather than that they existed at all. We will not reject the special master's findings of fact on the grounds that the evidence might have been weighed differently. *See State ex rel. Reynolds v. Lewis*, 1964-NMSC-095, ¶ 4, 74 N.M. 442, 394 P.2d 593 (stating that "[t]he fact that there may have been contrary evidence which would have supported a different finding does not permit [a reviewing court] to weigh the evidence").

**{16}**    Respondents also claim that, because the Follett Report was published in 1896, it "could not create a fact question relating to water use between 1896 and March 19,

1907." But this misstates the evidence and its import. Respondents' evidence of beneficial use consisted of imprecise land patent records from the 1880s and a 1974 declaration that stated that beneficial use began "prior to 1907." The special master found the Follett Report rebutted this evidence because it described ditches in the area as "washed out and abandoned" in the mid-1880s. Given the imprecision of the prima facie evidence of beneficial use, the Follett Report was sufficient to raise a reasonable inference that appropriation on the subfile property was at best irregular. *See Durrett*, 1970-NMSC-119, ¶ 10 (stating that substantial evidence includes "that which establishes facts from which reasonable inferences may be drawn"). It was therefore not error for the special master to then proceed to a weighing of the evidence. *See State ex rel. Martinez*, 1994-NMCA-100, ¶ 9 ("At most, admission of [declarations filed pursuant to Section 72-1-3] would satisfy [the a]ppellants burden of going forward; it would satisfy [the a]ppellant's burden of proof only if not rebutted by the state.").

## II. Substantial Evidence Supported That, to the Extent Any Pre-1907 Water Rights Were Perfected, They Were Abandoned or Forfeited by 1938

**{17}**    Respondents next argue substantial evidence did not support the special master's finding that any water right perfected by Respondents' predecessors in title was abandoned or forfeited by 1938. Respondents contend the survey map the special master "mainly relied upon" in making this finding did not include the subfile property and therefore could not provide evidence of nonuse. They further argue that an aerial photograph taken in 1935 that was proffered by the State to demonstrate an absence of irrigation did not constitute such evidence because it was considered only for evidence of row cultivation and not for evidence of irrigation of native grasses for pasturage. The State responds that the special master's findings of abandonment and forfeiture were supported by substantial evidence, including contemporaneous professional surveys and photographs.

**{18}**    To demonstrate abandonment of a water right, a party must show actual abandonment and either an express or implied intent to relinquish the right. *State ex rel. Reynolds v. S. Springs Co.*, 1969-NMSC-023, ¶ 7, 80 N.M. 144, 452 P.2d 478. "The failure to use a water right for an unreasonable time is evidence of the intention to abandon it [.]" *Id.* ¶ 8. By statute, a water right is deemed forfeited if it is not used beneficially for four years. *See* NMSA 1978, § 72-5-28(A) (2002).

**{19}**    The special master found the State proved by clear and convincing evidence that the subfile properties were not irrigated between 1903 and 1938 and were therefore subject to abandonment and/or forfeiture. *See State ex rel. Reynolds*, 1969-NMSC-023, ¶¶ 8, 22 (stating "[t]he failure to use a water right for an unreasonable time is evidence of the intention to abandon it" and citing approvingly authorities from other jurisdictions finding periods of forty, thirty, and eighteen years constituted unreasonably long periods of nonuse). Contrary to Respondents' suggestion, the special master did not rely primarily on a single map as evidence of non-irrigation; he found that *none* of the surveys, maps, or photographs depicting the area in and around the subfile properties during this period showed signs of irrigation or cultivation. Respondents' contention that

the aerial photograph could not serve as evidence of nonuse because the State's witness[5] examined it only for evidence of row cultivation is also misplaced. The testimony of the witness was not as narrow as Respondents suggest. The witness concluded that the 1935 photograph showed no indication of "irrigation, cultivation or beneficial use of water" on the subfile property, and that the type of vegetation visible on the photograph indicated "decades of nonuse of water for irrigation purposes." The special master adopted these findings in similarly broad terms. The special master was in the best position to weigh the evidence and the credibility of witnesses at trial, and it was not error for the district court to find that substantial evidence supported his findings of abandonment or forfeiture. *See State ex rel. Office of State Eng'r*, 2013-NMCA-023, ¶¶ 12, 16.

### III. The Special Master Did Not Err by Failing to Consider Irrigation of Native Grasses as a Beneficial Use of Surface Waters on the Subfile Property

{20}    Respondents next argue that the special master failed to consider irrigation of native grasses as evidence of beneficial use on the subfile property.[6] As we have indicated, the special master's finding that Respondents had failed to demonstrate beneficial use of surface water on the subfile properties during the early part of the twentieth century was not narrowly addressed to cultivation or farming. Respondents pointed to nothing in the record that supports the assertion that the State and the special master "recognized only row-crop irrigation as beneficial use," and we will not search the record on their behalf for such support. *See Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819 (stating that where a party fails to cite any portion of the record to support its factual allegations, the Court need not consider its argument on appeal). To the extent Respondents' reference that "flood irrigation" amounts to a claim that the special master erred by searching for evidence of diversion of surface waters for the purpose of irrigation, we disagree. Respondents contend that the New Mexico Constitution and *Sacramento Grazing Ass'n, Inc. v. United States*, 135 Fed. Cl. 168 (Fed. Cl. 2017), stand for the proposition that "it is beneficial use–not diversion–that creates a water right." This misstates applicable law. It is true that, in *Sacramento Grazing*, the United States Court of Federal Claims stated that "[u]nder New Mexico law, it is *beneficial use*–not diversion–that creates a water right." *Id.* at 201. However, the water right at issue in that case was a stock water right, and the court clarified that the "requirements to establish an irrigation water right are different than those concerning beneficial use of stock or

[5]Respondents contend Mr. John Thomas Verploegh "misinterpreted the 1935 [a]erial [p]hotograph," but Mr. Verploegh did not testify as to the content of the aerial photographs introduced by the State. It was Mr. James Hangan who testified about them, and it was this testimony the special master relied upon in finding the photographs provided evidence of nonuse.

[6]This issue was not raised at trial and Respondents appear never to have sought a ruling from either the special master or the district court on the question of whether irrigation of native grasses, if demonstrated, would satisfy Respondents' burden. However, Respondents did briefly raise this issue in their motion for reconsideration and the district court considered it in its denial of the motion. Accordingly, the issue was properly preserved. *See State ex rel. Children, Youth & Families Dep't v. Kathleen D.C.*, 2007-NMSC-018, ¶¶ 9-10, 141 N.M. 535, 157 P.3d 714 (holding that, where party did not raise issue during adjudicatory proceeding, but did raise it on post-trial motions, trial court was alerted and issue was preserved for appeal).

range water." *Id.* While both uses are "beneficial" for purposes of establishing or maintaining a water right, *id.*, proof of irrigation requires proof of diversion. *See id.* at 200 ("Since the use of water for irrigation is appurtenant to land, it is logical that the New Mexico courts required diversion, i.e., a man-made construction to establish the right to beneficial use of water for those purposes."). Respondents only asserted an irrigation right on appeal—whether to cultivate crops or to water natural grasses for pasturage. Accordingly, it would not have been error had the special master required evidence of diversion to demonstrate beneficial use from 1903 through 1938. *See State ex rel. Reynolds v. Miranda*, 1972-NMSC-003, ¶¶ 7-9, 83 N.M. 443, 493 P.2d 409 (holding that man-made diversion and intention to apply water to beneficial use is necessary to claim appropriation rights for agricultural purposes and stating that "grazing on and harvesting of grasses does not constitute appropriation of the water"). However, we see no evidence in the record, and Respondents identified none, that the special master made such a requirement. Respondents' third point of error is without merit.

## IV.     The District Court Did Not Abuse Its Discretion in Denying Respondents' Motion for Reconsideration

**{21}**     Respondents' final argument is that the district court erred when it denied Respondents' motion for reconsideration. The motion advanced three separate claims, but Respondents challenges only the district court's determination that a new trial based on newly discovered evidence was not warranted because the evidence could have been discovered prior to trial with the exercise of due diligence. The parties agree with the district court that the motion for reconsideration is governed by Rule 1-060(B)(2) NMRA. *See Pena v. Westland Dev. Co.*, 1988-NMCA-052, ¶ 13, 107 N.M. 560, 761 P.2d 438 (concluding that, in a proceeding before a special master where evidence is discovered after the proceeding and a party seeks to reopen the proceeding, the proper framework for analyzing the request is Rule 1-060(B)(2)). We review the district court's denial of Respondents' motion for an abuse of discretion. *See Pena*, 1988-NMCA-052, ¶ 14.

**{22}**     To prevail on a Rule 1-060(B)(2) motion, a party must demonstrate "(1) the new evidence would probably change the result; (2) it has been discovered since the trial; (3) it could not have been discovered before trial through the exercise of due diligence; (4) it is material to the issues in the case; (5) it is not merely cumulative; and (6) it is not merely impeaching or contradictory." *Pena*, 1988-NMCA-052, ¶ 15. Here, the new evidence advanced by Respondents consisted primarily of publicly available tax records purporting to value the subject property as agricultural land with permanent water. Although Respondents asserted that many publicly held tax records from the nineteenth and early twentieth century were moved, lost, or destroyed, they failed to articulate a reason for their failure to obtain them prior to trial.

**{23}**     The district court denied Respondents' motion on the grounds that Respondents had not established that the newly discovered evidence could not have been found prior to trial with the exercise of due diligence and, while the evidence might be probative of

the issues in dispute, the court could not say that the evidence would "probably change the result" of the proceeding. Respondents assert on appeal that they were "ignorant of the tax records that were more than 100 years old" but again do not offer any reason why they were unable to identify them prior to trial. Instead, Respondents contend it was the State's responsibility to discover and produce the tax records at issue, pursuant to NMSA 1978, §§ 72-4-13 (1982), -15, and -17.

**{24}** Nothing in the plain language of the statutes cited by Respondents suggests that the State is obligated to prove a water right asserted by a subclaimant. To the contrary, the statutory scheme governing stream adjudications envisions an adversarial process in which water rights claimants are joined as parties so that they may assert their rights in district court. *See* § 72-4-17 (authorizing suits for determination of water rights in district court). Even if the State were so obligated, Respondents have failed to demonstrate why a lack of diligence by the State should excuse Respondents' own lack of diligence. They point to no authority in support of this contention, and we therefore assume none exists. *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{25}** Finally, even if Respondents' failure to discover the tax records at issue is justifiable under the circumstances, the district court's denial of Respondents' motion was predicated upon an alternate, independently sufficient basis: the court's determination that the evidence would not "probably change the result" of the proceeding. *See Pena*, 1988-NMCA-052, ¶ 15 (listing as one of the elements to be satisfied for the granting of a new trial on the basis of newly discovered evidence that the evidence "would probably change the result."). The district court determined that, while the newly discovered evidence might strengthen Respondents' claim, in light of the substantial evidence relied upon by the special master, the court could not say that it would likely change the result. We agree. While some of the tax records proffered by Respondents provide evidence of water use on land that includes the subfile property, none of it is specific enough to disturb the special master's finding that Respondents had failed to identify the location or acreage of surface water use by their predecessors in title. Accordingly, the district court did not err in denying Respondents' motion for reconsideration.

**CONCLUSION**

**{26}** For the foregoing reasons, we affirm.

**{27} IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**